DECISION
{¶ 1} Relator, DaimlerChrysler Corporation, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's March 20, 2006 motion to terminate *Page 2 
temporary total disability ("TTD") compensation to claimant, Kathleen E. Moran, and to enter an order granting said motion.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion when it denied relator's motion to terminate TTD compensation. Relator's motion was based upon Dr. Andreshak's opinion that the claimant's inability to return to her former position of employment was permanent. Relying upon Vulcan Materials Co. v. Indus.Comm. (1986), 25 Ohio St.3d 31, the magistrate noted that a determination of permanency/maximum medical improvement ("MMI") for purposes of terminating TTD compensation does not require an assessment of whether the claimant could return to his or her former position of employment. The permanency of a disability relates solely to the perceived longevity of the condition at issue — not the claimant's ability to perform the tasks involved in his or her former position of employment. Therefore, the magistrate agreed with the commission's assessment that Dr. Andreshak's opinion that the claimant will never return to her former position of employment is not evidence that the claimant's condition is at MMI. Accordingly, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision essentially arguing that a claimant is not entitled to TTD when there is evidence that the claimant will never return to his or her former position of employment, even though there is evidence that the claimant's physiological condition will continue to improve. Relator relies primarily upon *Page 3 Advantage Tank Lines v. Indus. Comm., 107 Ohio St.3d 16, 2005-Ohio-5829, to support its position.
 {¶ 4} Although Advantage does contain dicta that seems to support relator's argument, Advantage did not directly address the issue presented here. We agree with the magistrate that the issue before us was directly addressed in Vulcan wherein the court expressly held that "[t]he commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment." Vulcan at 33. AlthoughAdvantage was decided after Vulcan, the court in Advantage did not discuss, let alone overrule Vulcan. Moreover, as previously noted, the language relator relies on in Advantage is dicta. The holding inVulcan is controlling. Therefore, we overrule relator's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and McGRATH, J., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on March 19, 2007 IN MANDAMUS {¶ 6} In this original action, relator, DaimlerChrysler Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's March 20, 2006 motion to terminate temporary total *Page 5 
disability ("TTD") compensation being paid to respondent Kathleen E. Moran ("claimant"), and to enter an order granting relator's motion.
Findings of Fact: {¶ 7} 1. On March 11, 1999, claimant sustained an industrial injury while employed as a "weld auditor" for relator, a self-insured employer under Ohio's workers' compensation laws. On that date, an elevator gate came down on top of claimant's head. The industrial claim was initially allowed for "herniated disc C4-5," and was assigned claim number 99-463550.
 {¶ 8} 2. Relator began payments of TTD compensation based upon C-84 reports from claimant's attending physician James Gosman, M.D.
 {¶ 9} 3. On February 7, 2003, at relator's request, claimant was examined by Jeffrey M. LaPorte, M.D., who opined that claimant "has reached maximum medical improvement with regard to the C4-5 herniated disc."
 {¶ 10} 4. On February 14, 2003, citing the report of Dr. LaPorte, relator moved for the termination of TTD compensation.
 {¶ 11} 5. Following a March 18, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation based upon a finding that the industrial injury had reached maximum medical improvement ("MMI"). The DHO's order relied upon the report of Dr. LaPorte. Apparently, the DHO's order of March 18, 2003 was not administratively appealed.
 {¶ 12} 6. On May 2, 2003, claimant moved for the allowance of additional conditions in the claim. *Page 6 
 {¶ 13} 7. Ultimately, following an August 12, 2003 hearing, a staff hearing officer ("SHO") additionally allowed the claim for "aggravation of pre-existing cervical spondylosis at C6-7 and C6-7 cervical radiculopathy."
 {¶ 14} 8. On May 26, 2005, Thomas G. Andreshak, M.D., performed a repeat cervical fusion at the C6-7 level. Relator resumed payments of TTD compensation.
 {¶ 15} 9. On January 11, 2006, at relator's request, claimant was examined by S. S. Purewal, M.D., who is board certified in orthopedic surgery. Dr. Purewal wrote:
 In my opinion, Ms. Moran has not yet reached maximum medical improvement, and it will take up to one year of healing and consolidation period for the fusion to be considered as having reached maximum medical improvement; that is if further x-rays do not show development of pseudoarthrosis at the surgery site.
 Ms. Moran needs to continue her rehabilitative exercise program for the next 4-6 weeks to strengthen her upper extremities.
 {¶ 16} 10. By letter dated March 8, 2006, relator's third-party administrator ("TPA") posed the following question to Dr. Andreshak:
 With regards to the allowed conditions of Herniated Disc C4-5 and aggravation of pre-existing cervical spondylosis C6-7 with radiculopathy, will this claimant ever return to his/her former position of employment?
 {¶ 17} Dr. Andreshak responded: "No she will not return to her former position." (Emphasis omitted.)
 {¶ 18} 11. On March 20, 2006, citing Dr. Andreshak's response to the March 8, 2006 letter, relator moved for termination of TTD compensation on grounds that Dr. Andreshak's response allegedly indicates that "claimant's condition is permanent." *Page 7 
 {¶ 19} 12. Following an April 12, 2006 hearing, a DHO issued an order denying relator's March 20, 2006 motion to terminate TTD compensation. The DHO's order explains:
 The District Hearing Officer finds that the Injured Worker has not yet reached Maximum Medical Improvement. The report of S.S. Purewal, M.D., dated 01/11/2006, is relied upon.
 The District Hearing Officer finds that Dr. Thomas Andreshak's, M.D. opinion that the Injured Worker will not return to her former position, stated on a letter dated March 8, 2006, is insufficient to terminate Temporary Total Disability, as Dr. Andreshak does not give any basis for that opinion. Further, the Injured Worker continues to treat for her allowed conditions in this claim.
 In his 01/11/2006 report, Dr. Purewal opines that the Injured Worker has not yet reached Maximum Medical Improvement. She underwent a cervical fusion at the C6-7 levels in 2005. Dr. Purewal opines that it will take up to "one year of healing and consolidation period before the fusion to be considered as having reached Maximum Medical Improvement." Dr. Purewal goes on to state that the Injured Worker needs [a] continued rehabilitative exercise program to help strengthen her upper extremities.
 Therefore, the District Hearing Officer finds that the Injured Worker has not yet reached Maximum Medical Improvement.
 {¶ 20} 13. Relator administratively appealed the DHO's order of April 12, 2006.
 {¶ 21} 14. Following a May 24, 2006 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 04/12/2006, is VACATED. Therefore, the C-86 Motion, filed 3/20/2006, by Employer, is DENIED.
 The Staff Hearing Officer DENIES the Employer's request to terminate Temporary Total Disability Compensation benefits.
 The Employer relies upon the cases Ramirez v. Industrial Commission 69 Ohio St. 2d 630 and Advantage Tank Lines v. Industrial Commission 107 Ohio St. 3d 16, in making the *Page 8 
argument that Injured Worker's condition has reached a level of permanency. In support of Employer's motion, a letter from the Employer to the Injured Worker's physician, Thomas Andreshak, dated 3/8/2006, was submitted. The statement asks with regard to the allowed conditions . . ."will this claimant ever return to his/her former position of employment?" The response given from Dr. Andreshak is, "no she will not return to her former position."
 The Staff Hearing Officer does not find the statement from Dr. Andreshak that she will not return to her former position to equate to a finding of permanency. Dr. Andreshak does not state that the Injured Worker's temporary disability has become permanent. The Court in Ramirez is clear that an employee is entitled to be paid Temporary Total Disability until one of the following three occur: 1) He has returned to work; 2) His treating physician has made a written statement that he is capable of returning to his former position of employment[;] or 3) That temporary disability has become permanent.
 Further, the Employer's reliance upon the Advantage Tank Lines case is misplaced. The Court in that case stated: "TTC awards are based exclusively on a claimant's ability to return to his or her former position of employment. In this context, a determination that a disability is permanent means that the condition will never improve to the point where the claimant can resume his or her former job. Thus, when this determination is made, the disability is no longer considered TEMPORARY, so TTC is terminated." The Staff Hearing Officer finds that the determination that the condition is permanent must first be made before a finding that the Injured Worker will not improve to the point where they can return to their former job. The Staff Hearing Officer finds that the Employer wishes to equate a negative statement that the Injured Worker is incapable of returning to the former position of employment to a finding of permanency. However, the Staff Hearing Officer does not find the one to equal the other.
 Further, Ohio Administrative Code 4121-3-32 is clear that Temporary Total Disability may be terminated by a District Hearing Officer upon the finding that the employee is capable of returning to his/her former position of employment; upon the finding that the employee has reached Maximum Medical Improvement; or upon the finding *Page 9 
that the Employee has received a written job offer of suitable employment.
 The Staff Hearing Officer does not find any of these requirements have been met.
 Therefore, this Staff Hearing Officer has no basis to terminate Injured Worker's Temporary Total Compensation benefits. Temporary Total Disability Compensation benefits are ordered to continue upon submission of proof.
(Emphasis sic.)
 {¶ 22} 15. On June 28, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 24, 2006.
 {¶ 23} 16. On August 31, 2006, the commission mailed an order denying relator's request for reconsideration of the June 28, 2006 SHO's refusal order.
 {¶ 24} 17. On September 26, 2006, relator, DaimlerChrysler Corporation, filed this mandamus action.
Conclusions of Law: {¶ 25} In response to the March 8, 2006 letter from relator's TPA, Dr. Andreshak opined that the allowed conditions of the industrial claim prevent claimant from ever returning to her former position of employment. In other words, it is Dr. Andreshak's opinion that claimant's inability to return to her former position of employment is permanent.
 {¶ 26} The SHO's order of May 24, 2006, in effect, determines that Dr. Andreshak's opinion is not some evidence that the industrial injury has reached MMI. On that basis, the SHO's order of May 24, 2006, denies relator's motion which was premised upon Dr. Andreshak's response to the March 8, 2006 letter. *Page 10 
 {¶ 27} Citing State ex rel. Advantage Tank Lines v. Indus. Comm.,107 Ohio St.3d 16, 2005-Ohio-5829, relator argues here, as it did before the commission, that Dr. Andreshak's opinion is some evidence upon which the commission can rely to support a finding that the industrial injury is at MMI.
 {¶ 28} The magistrate disagrees with relator's argument that Dr. Andreshak's response to the March 8, 2006 letter is some evidence supporting relator's motion for the termination of TTD compensation on permanency/MMI grounds.
 {¶ 29} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 30} Unfortunately, in their briefs, none of the parties to this action cited to the key decision of the Supreme Court of Ohio that is dispositive of relator's argument. In Vulcan Materials Co. v. Indus.Comm. (1986), 25 Ohio St.3d 31, the Supreme Court of Ohio addressed one of the termination criteria for TTD compensation, stating:
 A second issue raised in these appeals brings into question whether, in the commission's consideration of the permanency of a disability, the commission must determine whether the claimant could return to his former position of employment.
 We hold that in the consideration of the permanency of a disability, the commission need not determine whether the claimant could return to his former position of employment. The commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment. Further, in Logsdon v. Indus. Comm. (1944), 143 Ohio St. 508 * * *, at paragraph two of the syllabus, this court defined the term "permanent" as applied to disability under the workmen's compensation law as a condition which will, "* * * with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom." *Page 11 
Id. at 33.
 {¶ 31} Effective August 22, 1986, R.C. 4123.56(A) provides that payment of TTD compensation shall not be made "when the employee has reached maximum medical improvement."
 {¶ 32} Supplementing the statutory change, Ohio Adm. Code 4121-3-32
states:
 (A) The following provisions shall apply to all claims where the date of injury or the date of disability in occupational disease claims accrued on or after August 22, 1986. The following definitions shall be applicable to this rule:
 (1) "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.
 {¶ 33} Four years after Vulcan Materials, this court, in State ex rel.Matlack, Inc. v. Indus. Comm. (1991), 73 Ohio App.3d 648, equated the permanency concept of Vulcan Materials with the concept of MMI. This court, in Matlack, stated:
 In State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630 * * *, the Supreme Court of Ohio held that an employee may receive temporary total disability compensation until: (1) the employee has returned to work; (2) the employee's treating physician states that the employee is capable of returning to the employee's former position of employment; and (3) the temporary disability has become permanent. Accord State ex rel. Eaton Corp. v. Lancaster (1988), 40 Ohio St.3d 404[.] * * *
 The concept of permanency relates to the perceived longevity of the condition. Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31[.] * * * A permanent condition is one which will, with reasonable probability, continue for an indefinite period of time without any indication of recovery therefrom. Id. at 33 * * *, quoting Logsdon v. Indus. Comm. (1944), 143 Ohio St. 508[.] * * * *Page 12 
 Essentially, the Supreme Court of Ohio has adopted the ubiquitos maximum medical improvement ("MMI") test for purposes of temporary total disability compensation. As is the case in other states, temporary total benefits will be paid during the healing and treatment period for the condition until the claimant has reached some certain level of stabilization. See 2 Larson, The Law of Workmen's Compensation (1991), Sections 57.12(b) and (c). When this stabilization has been reached and no further improvement is probable, then the condition is permanent and claimant can seek compensation for types of permanent disability, namely, permanent partial disability compensation for partial impairment of earning capacity, and permanent total disability compensation for total impairment of earning capacity.
Id. at 654-655.
 {¶ 34} In Advantage Tank Lines, a single issue was presented: May a claimant receive permanent partial disability compensation and TTD compensation for the same condition over the same period? The court answered this single issue in the affirmative. In reaching its conclusion, the Advantage Tank Lines court states:
 TTC awards are based exclusively on a claimant's ability to return to his or her former position of employment. R.C. 4123.56; State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630[.] * * * In this context, a determination that a disability is permanent means that the condition will never improve to the point where the claimant can resume his or her former job. Thus, when this determination is made, the disability is no longer considered temporary, so TTC is terminated.
(Emphasis sic.) Id. at ¶ 8.
 {¶ 35} Relator's reliance upon the above-quoted language fromAdvantage Tank Lines is misplaced.
 {¶ 36} The court in Advantage Tank Lines did not overrule VulcanMaterials nor is that case even cited. Moreover, the definition of MMI or permanency was not at issue in *Page 13 Advantage Tank Lines as it was in Vulcan Materials. To the extent that the above-quoted language may be inconsistent with the holding inVulcan Materials or the definition of MMI, it must be viewed as dicta.
 {¶ 37} The SHO's order of May 24, 2006 correctly holds that Dr. Andreshak's response to the March 8, 2006 letter is not evidence of MMI, albeit the SHO's explanation for the holding differs from the explanation provided by the magistrate here. Nevertheless, the SHO's order of May 24, 2006 is not an abuse of discretion.
 {¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 KENNETH W. MACKE, MAGISTRATE *Page 1