[Cite as *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*, 121 Ohio St.3d 341, 2009-Ohio-1219.]

THE STATE EX REL. DAIMLERCHRYSLER CORPORATION, APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*,

**121 Ohio St.3d 341, 2009-Ohio-1219.]**

*Workers' compensation — Compensation for temporary total disability — Permanent inability to return to former position of employment — Maximum medical improvement — R.C. 4123.56(A).*

(No. 2007-2020 — Submitted January 13, 2009 — Decided March 24, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 06AP-968, 2007-Ohio-4799.

_____

**Per Curiam**.

**{¶ 1}** Appellee Kathleen E. Moran is receiving temporary total disability compensation. All the medical evidence before us indicates that her allowed conditions have not reached maximum medical improvement ("MMI"), which would disqualify her from temporary total disability compensation. But her attending physician has also stated that she can never return to her former position of employment. Moran's employer, DaimlerChrysler Corporation (now Chrysler L.L.C.), appellant, claims that this declaration justifies termination of Moran's temporary total disability compensation. Appellee Industrial Commission of Ohio rejected that argument, as did the Court of Appeals for Franklin County. That issue is now before us on Chrysler's appeal as of right.

**{¶ 2}** R.C. 4123.56(A) bars temporary total disability compensation when "any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical

capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement."

{¶ 3} Ohio Adm.Code 4121-3-32(A)(1), in turn, defines "maximum medical improvement" as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Chrysler admits that Moran has not attained MMI and that none of the other disqualifying events listed in R.C. 4123.56(A) has occurred. It urges termination nevertheless because, according to her doctor, Moran is permanently unable to return to her former position of employment. In arguing that this, too, forecloses temporary total disability compensation, Chrysler relies on language from *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 632, 23 O.O.3d 518, 433 N.E.2d 586, quoting the Court of Appeals for Franklin County:

{¶ 4} " 'An employee is entitled to be paid temporary total disability when injured and unable to work until one of the following three things occur[s]: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) the temporary disability has become permanent.' "

{¶ 5} Chrysler proposes that a temporary disability has "become permanent" when a claimant is permanently unable to return to the former position of employment. Its position presumably rests on *Ramirez*'s reference to "disability" and the long-standing definition of that term as " 'the effect that the medical impairment has on the claimant's ability to work.' " *Meeks v. Ohio Brass Co.* (1984), 10 Ohio St.3d 147, 148, 10 OBR 482, 462 N.E.2d 389, quoting the Industrial Commission's Medical Examination Manual. Chrysler thus concludes that MMI and "*Ramirez* permanency" are distinct concepts, meaning that the permanency of either the underlying medical condition or the inability to return to

the former position of employment warrants termination of temporary total disability compensation. Appellees and their amici collectively offer four counterarguments. Ultimately, analysis favors appellees.

{¶ 6} Appellees initially accuse Chrysler of ignoring the history and meaning of R.C. 4123.56(A). The statute was amended four years after *Ramirez* was decided but did not incorporate the *Ramirez* language cited by Chrysler. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 766. Instead, the General Assembly elected to address the temporariness component of temporary total disability compensation in terms of MMI. Moreover, in defining MMI in the Ohio Administrative Code, the Industrial Commission did not adopt *Ramirez*'s language and instead crafted a definition that referred specifically to the underlying medical condition. According to appellees, these choices reflect a legislative and administrative desire to view permanency from a medical, not employment, perspective.

{¶ 7} Appellees next assert that Chrysler has misread *Ramirez* by focusing on language without regard to context. Appellees emphasize that in *Ramirez*, no one ever alleged that the claimant's condition was no longer temporary, so permanency was never at issue. Instead, we were asked to decide whether a claimant who could not return to his former position of employment should be deemed to have a partial disability or a total one. We found the latter and, in so doing, created the definition of totality still used today. Appellees believe that because permanency was not at issue, there was no need for the decision to define the term. They are not convinced, therefore, that in referring to permanency in terms of a "disability," this court was definitively stating that permanency referred to the status of the claimant's inability to work and not to the underlying medical condition.

{¶ 8} This argument ties into a second point. Before 1987, the terms "disability" and "impairment" were often used interchangeably. This practice

was, in fact, so prevalent that we felt compelled in 1987 to correct it. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 171, 31 OBR 369, 509 N.E.2d 946, stressed that employing the terms interchangeably was inappropriate because they were not synonymous. "Impairment" was a medical term that referred to " 'the amount of the claimant's anatomical and/or mental loss of function' " attributable to the industrial injury. *Ohio Brass,* 10 Ohio St.3d at 148, 10 OBR 482, 462 N.E.2d 389, quoting the Industrial Commission's Medical Examination Manual. "Disability" was a legal designation of the effect of the medical impairment on the ability to work. Id. at 149. Because *Ramirez* was written during this time frame, appellees again question the deliberateness with which the term "disability" was selected.

{¶ 9} Appellees next assert that a large body of case law both before and after *Ramirez* contradicts the interpretation that Chrysler espouses. As early as 1944, this court articulated a definition of permanency that foreshadowed the definition of MMI now in the Administrative Code. *Logsdon v. Indus. Comm.* (1944), 143 Ohio St. 508, 28 O.O. 429, 57 N.E.2d 75, held at paragraph two of the syllabus:

{¶ 10} "The term 'permanent' as applied to disability under the workmen's compensation law does not mean that such disability must necessarily continue for the life of a claimant, but that it will, with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom."

{¶ 11} Common to both *Logsdon* and Ohio Adm.Code 4121-3-32(A)(1) is a probable lack of improvement, which, in the context of the Administrative Code definition, clearly refers to the underlying medical condition. *Logsdon* does, of course, refer to "disability," but it also preceded *Stephenson*, so it is not clear whether the term was employed purposefully or in a more generic sense.

**{¶ 12}** *Logsdon* was not cited in *Ramirez.* It was, however, cited four years after *Ramirez* in a case that squarely addressed the concept of permanency. In *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 33, 25 OBR 26, 494 N.E.2d 1125, we held:

**{¶ 13}** "[I]n the consideration of the permanency of a disability, the commission need not determine whether the claimant could return to his former position of employment. The commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment."

**{¶ 14}** *Vulcan* was followed by *State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm.* (1990), 48 Ohio St.3d 25, 548 N.E.2d 928. *General American* reaffirmed *Vulcan*'s definition, explaining that "[a] claimant's permanent inability to return to his former position of employment does not mean the claimant's medical condition will not improve." Id. at 26.

**{¶ 15}** At approximately the same time, the Court of Appeals for Franklin County decided *State ex rel. Matlack, Inc. v. Indus. Comm.* (1991), 73 Ohio App.3d 648, 655, 598 N.E.2d 121, which ruled:

**{¶ 16}** "[T]emporary total benefits will be paid during the healing and treatment period for the condition until the claimant has reached some certain level of stabilization. When this stabilization has been reached and no further improvement is probable, then the condition is permanent * * *." (Citation omitted.)

**{¶ 17}** In *State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler* (1990), 55 Ohio St.3d 109, 110, 564 N.E.2d 76, we stated that "[p]ermanency relates to the perceived longevity of the condition" and treated "permanency" and "MMI" as synonymous. *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 653, 640 N.E.2d 815, added that "so long as the claimant's condition has not

stabilized, and further medical improvement can be expected, TTD benefits are payable.”

**{¶ 18}** In contrast to these cases, Chrysler points to *State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550. At issue was the claimant’s ability to concurrently receive permanent partial and temporary total compensation for the same condition. The employer argued that it was incongruous to simultaneously pay compensation for both permanent and a temporary disability for the same condition.

**{¶ 19}** We affirmed the ability to receive dual payment under the right circumstances. We explained that the two forms of compensation focused on completely different things: while temporary total disability compensation centered on the claimant’s ability to return to the former position of employment, permanent partial disability compensation was unconcerned with a claimant’s ability to work. We also noted that “permanency” had a different meaning as applied to each form of compensation. In describing permanency in the context of temporary total disability, we wrote:

**{¶ 20}** “TTC awards are based exclusively on a claimant’s ability to return to his or her former position of employment. In this context, a determination that a disability is permanent means that the condition will never improve to the point where the claimant can resume his or her former job. Thus, when this determination is made, the disability is no longer considered *temporary*, so TTC is terminated.” (Emphasis sic; citations omitted.) *Advantage Tank Lines*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550, ¶ 8.

**{¶ 21}** Chrysler cites this passage as proof that “permanency” and “MMI” remain distinct and that temporary total disability compensation must cease if either of those conditions is met. The court of appeals rejected that contention:

**{¶ 22}** “Although *Advantage* does contain dicta that seems to support relator’s argument, *Advantage* did not directly address the issue presented here.

We agree with the magistrate that the issue before us was directly addressed in *Vulcan* wherein the court expressly held that '[t]he commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment.' *Vulcan* [25 Ohio St.3d] at 33 [25 OBR 26, 494 N.E.2d 1125]. Although *Advantage* was decided after *Vulcan*, the court in *Advantage* did not discuss, let alone overrule, *Vulcan*. Moreover, as previously noted, the language relator relies on in *Advantage* is dicta. The holding in *Vulcan* is controlling." Franklin App. No. 06AP-968, 2007-Ohio-4799, at ¶ 4.

{¶ 23} The court of appeals' observations are compelling. It is perhaps telling that the only case on temporary total disability compensation cited in the entire *Advantage* opinion is *Ramirez*. There is no mention of *Logsdon*, *Vulcan*, *Matlack*, or any of the cases previously discussed that both expressly defined permanency and called into question the significance of *Ramirez*'s reference to that concept. Given the amount of case law that has addressed permanency in terms of the underlying medical condition, the court of appeals' reasoning has substantial merit.

{¶ 24} Ultimately, appellees and their amici offer a stronger argument than Chrysler does. For the reasons set forth above, we continue to declare MMI to be the only standard by which temporary total disability compensation can be terminated on a basis of permanency.

{¶ 25} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., not participating.

_____

Eastman & Smith, Ltd., Thomas J. Gibney, and A. Brooke Phelps, for appellant.

Richard A. Cordray, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.

Polofka & Van Berkom and John R. Polofka, for appellee Kathleen E. Moran.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amicus curiae Ohio Chamber of Commerce.

Vorys, Sater, Seymour & Pease, L.L.P., and Robert A. Minor, urging reversal for amicus curiae Ohio Self-Insurers' Association.

Bricker & Eckler, L.L.P., and Thomas R. Sant, urging reversal for amicus curiae Ohio Chapter of the National Federation of Independent Business.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, urging affirmance for amicus curiae Ohio AFL-CIO.

Philip J. Fulton Law Office and Philip J. Fulton, urging affirmance for amicus curiae Ohio Association for Justice.

_____