[Cite as *State ex rel. Block v. Indus. Comm.*, 2022-Ohio-4474.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael E. Block, | : | |
| Relator, | : | No. 20AP-137 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 13, 2022

**On brief:** *Denio A. Leone, LLC*, and *Denio A. Leone*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, Michael E. Block, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his request for compensation for the total loss of use of his right hand and to award him the denied compensation. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.

{¶ 2} As reflected in the facts given in the magistrate's decision, Mr. Block was injured on December 12, 2012, during the course of his employment as a roofer when he fell from a residential roof onto a concrete walkway. He suffered a number of injuries, most prominently to the right wrist. After surgery and years of treatment, he filed a claim on May 9, 2019, for the total loss of use of the right hand. On August 20, 2019, a district hearing officer ("DHO") granted Mr. Block total loss of use compensation. The commission

appealed and a staff hearing officer ("SHO") vacated the DHO's order on October 5, 2019. After exhausting his administrative avenues of appeal, Mr. Block filed a complaint for a writ of mandamus.

**{¶ 3}** The magistrate has rendered a decision, attached below, that includes findings of fact and conclusions of law. He recommends denying Mr. Block's request for a writ of mandamus. Mr. Block has filed objections to the magistrate's decision. Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio,* 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982); *State ex rel. Fitzgerald v. Bd. of Trustees of Ohio Police & Fire Pension Fund,* 10th Dist. No. 14AP-968, 2015-Ohio-5079, ¶ 7. "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

**{¶ 4}** This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986); *State ex rel. Barnett v. Indus. Comm. of Ohio,* 10th Dist. No. 14AP-628, 2015-Ohio-3898, ¶ 9. The "some evidence" standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.,* 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992).

**{¶ 5}** Mr. Block's first objection is that "[t]he Magistrate's Decision fails to adequately address the propriety of the Industrial Commission's conclusion that Relator presented no proof of permanent functional limitations in the use of his right hand." (July 26, 2021 Objs. at 1.) Mr. Block first quotes the October 5, 2019 order of the SHO vacating the DHO's loss of use award, which stated as follows:

The request for payment of a scheduled loss award for total loss of use of the right hand is denied. This finding is based on two factors. The Injured Worker has not presented proof that the functional limitations in the use of his right hand are permanent. In addition, the 06/21/[2019] report of Mark Pelligrino, M.D., documents that the Injured Worker retains some function of the hand and has not lost function in the hand for all practical purposes. All proof on file was reviewed and considered.

{¶ 6}  Mr. Block points to "the arguments made by counsel for the Bureau of Worker's Compensation * * * to the SHO on the issue of permanency" as the basis for the SHO's conclusion that "evidence was lacking on proof of permanency." (Objs. at 2.) According to Mr. Block, the magistrate has chosen "to ignore these arguments" and instead discusses the findings of Dr. George's report as the possible basis for the SHO's conclusion that Mr. Block had not presented evidence to prove his claim. He considers it inconsistent for the magistrate to refuse to speculate on whether or not the arguments made to the SHO factored into its finding that he had presented no proof of his claim while at the same time speculating as to how Dr. George's report may have constituted grounds for the same finding: "In order for the parties to clearly ascertain what the SHO relied upon, it was incumbent upon her to specify the grounds and findings upon which this important factor was based. This was not done." *Id*. at 4.

{¶ 7}  Mr. Block had the burden of proving that he was entitled to compensation under R.C. 4123.57(B) for the total loss of use of his right hand. *State ex rel. Varney v. Indus. Comm. of Ohio*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16. It was his burden to "demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes." *Id*. The magistrate did not err by discussing the central piece of medical evidence Mr. Block submitted as proof of total loss in order to explain that the SHO's finding—that Mr. Block had not "presented proof that the functional limitations in the use of his right hand are permanent"—was based on some evidence in the record. (Stip. at 90, Oct. 5, 2019 Order.) Furthermore, and most importantly, Mr. Block has not explained how the magistrate's consideration of the argument *against* the award by another party would have demonstrated an abuse of discretion by the SHO and that he would therefore have a clear legal right in mandamus. The first objection is overruled.

{¶ 8}  Mr. Block's second objection states: "The Magistrate's Decision incorrectly presumes the Commission's Order regarding lack of proof of permanency was based upon the 'two fingers plus' theory, and also incorrectly posits that an injured worker must have a finger or hand allowance in order to receive benefits for loss of use of a hand." (Obj's at 5.) Mr. Block asserts that "[i]t is not appropriate for the Magistrate to speculate as to which theory was the basis for the Commission's denial of loss of use, and that it was "speculative" for him to conclude "that it was one theory over the other that was not satisfied by the evidence." *Id.* at 6-7.

{¶ 9}  As Mr. Block points out, R.C. 4123.57(B) allows a claimant to prove a total loss of use of the hand in two ways.  "The 'flat loss' theory is premised upon amputation loss or loss of use of the fingers and parts of the hand." *State ex rel. Ferrolux Metals Co. v. Indus. Comm. of Ohio*, 10th Dist. No. 13AP-463, 2014-Ohio-3302, ¶ 12, citing *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244, 2004-Ohio-2589, ¶ 24.  The "two fingers plus" theory corresponds to "the loss of two or more fingers by amputation or ankylosis" under R.C. 4123.57(B).  *Ferrolux* at ¶ 12.

{¶ 10} We disagree with Mr. Block's characterization of the magistrate's analysis. While the magistrate did appear to reference the "two fingers plus" theory, he did not presume that any loss of use award required "the loss of use of two or more fingers," although this phrase appears on page ten of his decision.  Reviewing the magistrate's discussion in its entirety, we conclude that his focus was whether Dr. George's report supported Mr. Block's contention of having "suffered a total loss of use of the right hand." (Mags. Decision at 16.)  As the magistrate noted, Dr. George described "some loss of functionality," and this was some evidence for the SHO to then conclude that the report "was insufficient to support a finding that there was a total loss of use and that any loss of use was permanent." *Id.*  Dr. Pellegrino's report constituted another piece of "some evidence" for the finding. *Id.* Thus, the magistrate's discussion was focused on whether the substance of the two reports constituted "some evidence" for the SHO's decision.  The second objection is overruled.

{¶ 11} In the third objection, Mr. Block states: "The Magistrate's Decision finding that Dr. Pellegrino's report constitutes some evidence supporting the Commission's decision is based upon an incorrect application of law and is in conflict with controlling

Ohio precedent." Mr. Block's argument is mainly a criticism of Dr. Pellegrino's report and the magistrate's discussion of how it could constitute some evidence for the SHO's ruling. (Objs. at 9-11.) However, "the commission is the exclusive evaluator of weight and credibility and that as long as some evidence supports the commission's decision, we will defer to its judgment." *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 475 (2000).

{¶ 12} Mr. Block also asserts that Dr. Pellegrino's report "is so internally inconsistent with his findings that it cannot constitute some evidence to support the Commission's decision." (Objs. at 12.) He argues that Dr. Pellegrino's observation that his "right hand is capable of full range of motion" is inconsistent with the report's finding that his "wrist fusion results in difficulty achieving certain functional positions to enable use of the right hand." *Id.* But this summation of Dr. Pellegrino's report obscures his actual conclusion: "There is some subjective decreased sensation in the right hand in the ulnar distribution, but the right hand neurological function including sensation, strength, remains functionally intact to allow full range of motion without increased pain, grasping and pincher grasp and fine motor movement. These findings allow functional use of the right hand to perform tasks such as buttoning, holding silverware, hold[ing] and drinking from a cup, and writing." (Stip. at 51.) Furthermore, Dr. Pellegrino stated that Mr. Block's "wrist fusion results in difficulty achieving certain functional positions to enable use of his right hand *but this is not to the extent where it renders his right hand useless for all practical purposes.*" (Emphasis added.) *Id.* at 52. The foregoing italicized language, omitted by Mr. Block in his objection, undermines his assertion of internal inconsistency in the report. *See State ex rel. Wyrick v. Indus. Comm. of Ohio*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 14 (holding that report asserting claimant had " 'significant remaining function of his left upper extremity,' while finding at the same time that he was able to use his hand, wrist, and forearm only if the elbow remains at waist level" was internally inconsistent and could not constitute some evidence for denial of loss of use award). The third objection is overruled.

{¶ 13} Following our independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, the objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law

contained therein.  In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*


KLATT and DORRIAN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael E. Block, | : | |
| Relator, | : | |
| v. | : | No. 20AP-137 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 25, 2021

*Denio A. Leone LLC,* and *Denio A. Leone,* for relator.

*Dave Yost,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 14} Relator, Michael E. Block ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimant's request for payment of a scheduled loss award for total loss of use of the right hand pursuant to R.C. 4123.57(B), and to enter an order granting such compensation.

Findings of Fact:

{¶ 15} 1. On December 12, 2012, claimant sustained an industrial injury when he fell 30-35 feet off of the roof of a residence onto a concrete walkway while installing a new roof in the course of his employment with respondent Brunswick Home Improvement, LLC, and his workers' compensation claim has been allowed for the following conditions: open

fracture left distal radius; closed fracture right distal radius; closed fracture left intertrochanteric; closed fracture left pubis; closed fracture left sacrum/coccyx; closed fracture left subtrochanteric; closed fracture right distal radius; nonunion right wrist due to progressive collapse of distal radius; myofascitis left hip; myofascitis right wrist; and loss of use of the right hand.

{¶ 16} 2. Claimant underwent many surgeries following his accident, including surgeries on both wrists and left hip.

{¶ 17} 3. Starting on January 30, 2014, claimant began receiving treatment from Todd Hochman, M.D. At the time, Dr. Hochman noted that, with regard to the right wrist, claimant has some ulnar deviation at the wrist.

{¶ 18} 4. Claimant saw Dr. Hochman on August 28, 2014, and in his report, Dr. Hochman noted that claimant has significant abnormality throughout the right wrist, and his right wrist range of motion is limited.

{¶ 19} 5. Claimant saw Dr. Hochman on October 27, 2014, and in his report, Dr. Hochman found that claimant has ulnar deviation at the right wrist joint; hypertrophy of the bones about the wrist; atrophy throughout the hands; extremely limited range of motion; and significant disability.

{¶ 20} 6. Claimant saw Dr. Hochman on January 5, 2015, and in his report, Dr. Hochman found that Harry Hoyen, M.D., believed there was a nonunion of the right wrist and recommended arthrodesis; and the right wrist has yet to heal.

{¶ 21} 7. Claimant saw Dr. Hochman on February 6, 2015, and in his report, Dr. Hochman found that claimant's right wrist was shaking; claimant reports his wrist being in a lot of pain; and there is a persistent nonunion of the right wrist.

{¶ 22} 8. Claimant saw Dr. Hochman on March 6, 2015, and in his report, Dr. Hochman found that claimant has pain throughout the right upper extremity; he has true pathology and pain; and his claim was recognized for nonunion collapse of the distal radius, right wrist.

{¶ 23} 9. On May 7, 2015, claimant saw Dr. Hochman, who indicated in his report that claimant's wrist has swelling, and he has difficulty with range of motion throughout the wrist.

{¶ 24} 10. On September 4, 2015, Dr. Hoyen issued a report, in which he found the following: claimant's right wrist was stable in the splint; his wrist and finger motion is significantly limited; and arthrodesis of the wrist is indicated.

{¶ 25} 11. On September 14, 2015, claimant saw Dr. Hochman, and in his report he found that claimant continues to have pain in his right wrist; he has extremely limited range of motion throughout the right wrist; he has crepitus; he has ulnar deviation; and he has decreased hand grip. Dr. Hochman's report from October 19, 2015, indicated much the same.

{¶ 26} 12. Claimant saw Dr. Hoyen in October and November 2015, and in his reports, he noted very little motion of the wrist, periosteal callus formation, and nonunion of the wrist. They discussed surgery and wrist arthrodesis.

{¶ 27} 13. Claimant underwent a right wrist arthrodesis on December 4, 2015.

{¶ 28} 14. On March 10, 2016, claimant saw Dr. Hochman, who found claimant is still experiencing problems with the right wrist; he is starting occupational therapy; he has limited range of motion throughout the thumbs and fingers; and he is neurovascularly intact.

{¶ 29} 15. On June 1, 2016, claimant saw Dr. Hochman, who found claimant's right wrist has some abnormality but not as much angulation; there is no range of motion throughout the wrist; he has range of motion throughout the fingers and thumb; he has some difficulty with opposition; he is neurovascularly intact; and he has significant impairment of the right upper extremity.

{¶ 30} 16. On June 2, 2016, claimant saw Dr. Hoyen, who found he has no right wrist range of motion due to fusion; his finger range of motion is reasonable and functional; and he has some atrophy of the arm.

{¶ 31} 17. On September 14, 2016, claimant saw Dr. Hochman, who found claimant is still having problems throughout the right wrist; has extreme limitations throughout the right upper extremity; has obvious atrophy throughout the wrist and hand; and has weakness in his hand.

{¶ 32} 18. On December 1, 2016, claimant saw Dr. Hoyen, who issued a report, in which he found the following: claimant's right wrist demonstrates very little motion and

tenderness of the distal plate; and arthrodesis is nearly complete although there is still some delayed union.

{¶ 33} 19. On January 5, 2017, claimant saw Dr. Hoyen, who issued a report, in which he found the following: the plate is lifted off the bone; there is tenderness over the distal plate; there is pain over the distal ulnar as well as over the plate; and the plate has had screw failure distally.

{¶ 34} 20. On April 14, 2017, Dr. Hoyen issued a post-surgery report, in which he found the following: he removed claimant's hardware; claimant's wrist was well fused with no motion; and claimant received a right brachial plexus peripheral nerve block at the axillary site.

{¶ 35} 21. On June 22, July 13, August 1, August 31, and October 17, 2017, Antony M. George, M.D., issued reports, in which he found claimant has painful right arm spasms to his wrist, tenderness, loss of range of motion, and arm and grip weakness.

{¶ 36} 22. On July 27, 2017, claimant saw Dr. Hoyen, who issued a report, in which he found the following: there is pain over the ulnar aspect; he has independent finger extension; there is tenderness; he has good supination to 60 degrees and pronation to 40 degrees; and he still has limitations.

{¶ 37} 23. On November 9, 2017, and January 18, 2018, Dr. Hoyen issued reports, in which he found the following: claimant has very minimal wrist range of motion; he has tenderness over the dorsal ulnar sensory nerve; the midcarpal joint may be partially open; and he has stable wrist arthrodesis with degeneration ulnar carpal and distal radioulnar joints.

{¶ 38} 24. On December 3, 2018, Maria Armstrong Murphy, M.D., performed an independent medical examination ("IME"), and on December 10, 2018, she issued an IME report, in which she found the following: there is trace movement of extension, flexion, and ulnar and radial deviation; there are fair distal pulses with mild stigmata suggestive of peripheral vascular disease; atrophy is noted in the right forearm; weakness in the right wrist extensors and flexors secondary to the fusion; claimant has weak grip on the right; sensation is decreased in the ulnar distribution; claimant is not at maximum medical improvement ("MMI") in the right upper extremity; and claimant should repeat trigger-point injections and therapy prior to being deemed MMI.

{¶ 39} 25. On April 16, 2019, Dr. George issued a report, in which he found the following: due to non-union bone healing, claimant needs another surgery, and after several attempts at trigger-point injections, he still has significant loss of function; his functional grip strength with the right hand has continued to be below the National Institute for Occupational Safety and Health ("NIOSH") and the Occupational and Safety Health Administration ("OSHA") requirements for employment; his grip testing is only 11 pounds on the right and 26 pounds on the left, which is below that needed for a construction or roofing job; his loss of motion from the ankylosis of the wrist minimizes more repetitive-use-type employment; he has recurring spasms and recurring pain with activities of daily living; Dr. George hopes that the current treatment will at least minimize the necessity for pain medications and simple activities of daily living; without any plans for further surgical intervention by Dr. Hoyen or any great change in his function, there should be considered a total loss of use of his right hand for gainful employment; and Dr. George believes that treatment is still necessary for palliative reasons and to improve his level of function for activities of daily living and self-care in the hopes to minimize or eliminate the need for narcotic pain medication.

{¶ 40} 26. On May 9, 2019, claimant filed a C-86 motion, requesting compensation for the total loss of use of the right hand, relying on the reports of Drs. George, Hoyen, and Armstrong Murphy.

{¶ 41} 27. Mark Pellegrino, M.D., issued an IME report based upon a June 21, 2019, examination, in which he found the following: claimant has had fusion of his right wrist that interferes with his function; he reports difficulty using his right hand; he can hold food utensils in his right hand and use them but prefers to use his left hand for these activities; he has sensation in his right hand, and he can move all of his fingers; his right wrist is fused with no range of motion; there is a right palmar flexion deformity; he is unable to flatten his right palm on a level surface; light palpation attempts result in complaints of pain in the right dorsal wrist area and to a lesser degree the right volar wrist area with exaggerated withdrawal response noted; there is no other pain with palpation in the rest of the right arm including the fingers; right shoulder and elbow range of motion is normal; individual fingers and right thumb passive range of motion is within normal limits; no swelling is noted in the right palm and fingers, and no joint effusion, redness, or heat is present; no

significant skin discoloration is noted; deep tendon reflexes are 2+ and symmetric; claimant reports no pinprick sensation throughout the dorsal hand and palm involving digits 4 and 5; no light-touch or pinprick abnormalities are noted in the right radial side of the hand including all of digits 1, 2, and 3; muscle-strength testing is essentially 5/5 in the right-hand muscles; there is some weakness noted in the wrist extensor muscles; and he can move thumb to index, middle, ring, and little fingers in a fine-motor pincher grasp. Dr. Pellegrino opined that the allowed injury has not resulted in a total permanent loss of use of the right hand; claimant's primary functional limitation pertaining to the right arm is caused by fusion of the right wrist; the right-hand neurological function remains functionally intact to allow full range of motion without increased pain, grasping and pincher grasp, and fine motor movement; he has functional use of the right hand to perform tasks such as buttoning, holding silverware, holding and drinking from a cup, and writing; he completed forms using the right hand holding a pen in a fine pincher grasp and using coordinated actions to form neat and legible printing; his wrist fusion results in difficulty achieving certain functional positions to enable use of his right hand, but this is not to the extent that it renders his right hand useless for all practical purposes; and his right hand is capable of performing most of the function that it commonly performs despite the allowed conditions in the claim and the limitations imposed by the allowed conditions.

{¶ 42} 28. On August 12, 2019, in response to Dr. Pellegrino's report, Dr. George submitted a rebuttal report, in which he indicated the following: claimant has less than 50% right-hand grip strength, not 5/5, as Dr. Pellegrino found; Southwest General Hospital found further treatments would not improve his right-hand grip strength, which was only 8 pounds of pressure, as opposed to 49 pounds of pressure for his left hand; claimant can only hold a cup or coffee mug for less than 1 or 2 minutes; claimant stated he is not able to use tools in his right hand with any skill or dexterity; Dr. Pellegrino's statement that claimant has strength and functionality intact, full range of motion without increase pain with grasping or pinch grasp, the ability to perform fine motor movement like buttoning, holding silverware, holding and drinking from a cup, and writing, contradicts everything in the history and physical exam; the more reliable understanding of claimant's level of functioning is that he has become a left-handed driver and a left-handed person for daily activities; for all practical purposes and for all intents and purposes he has very limited use

of the right hand for most activities of daily living and certainly limiting for any employment; and there is no job that claimant would be qualified to be recruited for under vocational rehabilitation.

{¶ 43} 29. On August 20, 2019, a district hearing officer ("DHO") mailed an order, in which the DHO granted claimant's motion and found the following: claimant has for all intents and purposes suffered a total practical loss of use of his right hand due to the injuries and surgeries in this claim; claimant is granted an award of 175 weeks of compensation for loss of use of the right hand; and the order is based on the August 12, 2019, report of Dr. George, and indication by claimant that he has to perform all of his daily activities by using his left hand because he has lost any practical use of his right hand due to the injuries and surgeries in this claim. The commission appealed.

{¶ 44} 30. On October 2, 2019, a hearing was held before a staff hearing officer ("SHO"), at which claimant testified. On October 5, 2019, the SHO mailed an order, in which the SHO found the following: (1) the August 20, 2019, order of the DHO is vacated; (2) the request for payment of a scheduled loss award for total loss of use of the right hand is denied; (3) the claimant has not presented proof that the functional limitations in the use of his right hand are permanent; (4) the June 21, 2019, report of Dr. Pellegrino documents that claimant retains some function of the hand and has not lost function in the hand for all practical purposes; and (5) all proof on file was reviewed and considered. Claimant appealed.

{¶ 45} 31. On October 24, 2019, the commission refused claimant's appeal. Claimant filed a request for reconsideration.

{¶ 46} 32. On November 21, 2019, the commission denied claimant's request for reconsideration.

{¶ 47} 33. On March 4, 2020, claimant filed in this court a complaint in mandamus, requesting this court vacate the commission's order that denied his request for payment of a scheduled loss award for total loss of use of his right hand pursuant to R.C. 4123.57(B), and to enter an order granting such compensation.

Conclusions of Law and Discussion:

{¶ 48} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 49} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 50} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 51} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm or leg. For the "loss of a leg," the statute provides for an award of 200 weeks of compensation. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364.

{¶ 52} To qualify for compensation under R.C. 4123.57(B), the loss of use need not be absolute if the claimant has "suffered the permanent loss of use of the injured bodily member for all practical intents and purposes." *Id.* citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. However, a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function. *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *Alcoa*. "[T]he pivotal question is how much function remains." *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, ¶ 15. In *Alcoa*, the Supreme Court of Ohio noted that evidence indicated the claimant continued to use what remained of his impaired limb for some minor functions: pushing open a car door, and tucking

paperwork between the upper arm and chest; however, these minor residual functions did not preclude a scheduled award. *Id.* at ¶ 6.

**{¶ 53}** An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547. Medical evidence of disability or loss may be impeached by evidence of actual work or other physical activity inconsistent with that assessment. *State ex. rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316.

**{¶ 54}** In the present case, claimant argues that two of the factors on which the commission relied to deny his motion for loss of use are incorrect, contrary to the facts and law, and are indicative of an abuse of discretion. Specifically, claimant contends the following: (1) that the commission's conclusion that claimant did not present proof of permanent functional limitations in the use of his right hand is contrary to the evidence submitted in this claim; and (2) the commission's reliance on the medical report of Dr. Pellegrino is an abuse of discretion, as that report is internally inconsistent and/or equivocal and does not constitute some evidence that would support the commission's decision.

**{¶ 55}** With regard to the first argument — that the commission's conclusion that claimant did not present proof of permanent functional limitations in the use of his right hand is contrary to the evidence — the record contains some evidence to support the commission's finding. Claimant argues that the SHO's conclusion was apparently based on the two arguments presented by the Bureau of Workers' Compensation ("BWC") at the SHO hearing: (1) Dr. George did not dictate the loss of use was permanent in his reports because he did not used the word "permanent"; and (2) Dr. George submitted MEDCO-14 Physician's Report of Work Ability forms that indicated relator has not yet reached MMI; thus, there was still room for improvement and the loss of use could not yet be determined to be permanent.

**{¶ 56}** However, nowhere does the SHO's order indicate that these were the bases for the commission's decision. The SHO could have relied upon either or neither of the reasons argued by the BWC at the hearing to arrive at her conclusion. Given the SHO did

not specifically address either of these grounds, the magistrate declines to speculate and address in an advisory manner the legal issues presented with respect to these grounds.

{¶ 57} Instead, addressing the commission's finding as stated, the commission could have reached its conclusion based on some evidence in the record. Claimant relies heavily on Dr. George's rebuttal report to support permanency, pointing to Dr. George's findings that there was total ankylosis of the right wrist due to fusion and the loss of sensation in two fingers extending all the way up throughout the hand to the wrist. However, these findings do not mandate a conclusion that claimant suffered a total loss of use of the right hand. Ankylosis of the wrist and loss of sensation in two fingers do not inevitably equate to total loss of use of the right hand. Claimant's allowed conditions and ankylosis are in his wrist, not his hand, and a loss of use of two or more fingers by amputation or ankylosis is required to constitute a loss of the use of the hand per R.C. 4123.57(B). Even if Dr. George opined claimant had a loss of sensation in two fingers, claimant has not shown the loss of use of two or more fingers. Dr. George's rebuttal report also is lacking in several respects to support a total and permanent loss of use of the hand. He opines there was a "significant" loss of function; a loss of grip strength below NIOSH and OSHA requirements for employment and that needed for a construction or roofing job; the wrist ankylosis "minimizes" more repetitive-use-type employment; and treatment is still necessary to improve claimant's level of function for activities of daily living and selfcare. These opinions do not necessarily demand a finding of a permanent total loss. While Dr. George clearly noted some loss of functionality, reading these opinions as a whole, the commission could have found that Dr. George's rebuttal report was insufficient to support a finding that there was a total loss of use and that any loss of use was permanent. The underlying findings stopped short of concluding there was a permanent, total loss of use for all practical purposes.

{¶ 58} Dr. Pellegrino's June 21, 2019, report provided some evidence to support the commission's finding that claimant retains some function of the right hand and has not lost function in the hand for all practical purposes. Dr. Pellegrino opined that the allowed injury did not result in a total permanent loss of use of the right hand. Although Dr. Pellegrino explained that claimant's primary functional limitation of the right arm was due to the fusion of his right wrist, and claimant suffered some subjective decreased sensation in the

right hand, he indicated that the right hand neurological function remained functionally intact to allow full range of motion without increased pain, and grasping, pincher grasp, and fine-motor movement. Dr. Pellegrino offered several examples of the functional uses of claimant's right hand, including buttoning, holding utensils, holding and drinking from a cup, and writing. He also noted that claimant completed writing tasks with his right hand during his appointment using clear handwriting. Dr. Pellegrino admitted that claimant's wrist fusion resulted in difficulty achieving certain functional positions to enable the use of his right hand, but it did not render his right hand useless for all practical purposes, and, in fact, claimant's right hand could perform most of the functions it commonly performs. Dr. Pellegrino's report clearly provides some evidence to support the commission's decision.

{¶ 59} Claimant's argument that the commission's reliance on Dr. Pellegrino's report was in error because it is internally inconsistent and/or equivocal is without merit. Claimant contends that Dr. Pellegrino's ultimate opinion that there was not a permanent, total loss of use of the right hand is contradicted by his findings and description of the lack of functioning of the right hand. To demonstrate this contradiction, claimant points out that Dr. Pellegrino also found: (1) claimant has undergone multiple surgeries; (2) claimant had a fused right wrist with no range of motion, which interferes with his functioning; (3) there is no sensation through the dorsal hand and palm involving digits 4 and 5; (4) he has well-healed scars in the forearm and wrist areas; (5) the right forearm is 2 inches shorter than the left; and (6) the wrist fusion results in difficulty achieving certain functional positions to enable use of the right hand. Given these findings, claimant asserts, it was contradictory for Dr. Pellegrino to then ultimately conclude his right hand was capable of performing most of the functions that it commonly performs.

{¶ 60} However, Dr. Pellegrino's findings are not irreconcilable with his ultimate conclusion that there was no total loss of use. These observations, neither separately nor in combination, necessarily render claimant's right hand useless for all practical purposes. That claimant has undergone multiple surgeries, has well-healed scars, and has a right forearm two inches shorter than the left do not speak to loss of use or his level of functionality. Also, Dr. Pellegrino's findings that claimant has no range of motion in his wrist and difficulty achieving certain functional positions due to the wrist fusion do not necessarily foreclose use of the hand for all practical purposes. Dr. Pellegrino explained how

claimant was still able to use his right hand and gave examples of his significant level of functionality. Finally, as addressed above, that claimant had no sensation involving two digits does not constitute a loss of use of the hand, pursuant to R.C. 4123.57(B), which requires a loss of use of two or more fingers by amputation or ankylosis to constitute a loss of the use of the hand. To be sure, the injuries and limitations acknowledged by Dr. Pellegrino and documented in other parts of the record are not insignificant; however, Dr. Pellegrino's ultimate conclusion was supported by his many findings, as summarized above, that show claimant retained substantial use and functionality of his right hand so as to preclude his claim for permanent total loss of use. Although claimant protests Dr. Pellegrino's ultimate conclusion is incredulous given his underlying findings, determinations of credibility and weight rest exclusively within the commission's domain. *See State ex rel. Teece*, supra.

{¶ 61} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).