[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Block v. Indus. Comm.*, Slip Opinion No. 2023-Ohio-4184.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4184

THE STATE EX REL. BLOCK, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Block v. Indus. Comm.*, Slip Opinion No. 2023-Ohio-4184.]**

*Workers' compensation—Permanent-partial-disability compensation—If one finding provides an independent basis for Industrial Commission's decision and that finding is supported by some evidence, commission's order will not be disturbed—Some evidence in record supports Industrial Commission's decision denying claimant's request for compensation for loss of use of hand—Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 2023-0080—Submitted September 26, 2023—Decided November 22, 2023.)

APPEAL from the Court of Appeals for Franklin County,

No. 20AP-137, 2022-Ohio-4474.

_____

**Per Curiam.**

{¶ 1} Appellant, Michael E. Block, appeals the judgment of the Tenth District Court of Appeals denying his complaint for a writ of mandamus requiring appellee, Industrial Commission of Ohio, to award him a scheduled award of permanent-partial-disability ("PPD") compensation under R.C. 4123.57(B) for the loss of the use of his right hand. Because some evidence in the record supports the commission's decision denying Block's request for compensation, we affirm the court of appeals' judgment.

## BACKGROUND

{¶ 2} Block was injured in December 2012 during the course of his employment as a laborer when he fell 35 feet from a roof onto concrete below. The Bureau of Workers' Compensation allowed Block's claim for several conditions, including "closed fracture right distal radius," "nonunion right wrist due to progressive collapse of distal radius," and "myofascitis right wrist." After surgeries on his right wrist and years of treatment, Block, who is right-handed, requested that the commission award him compensation under R.C. 4123.57(B) for the loss of the use of his right hand. In support of his request, Block relied primarily on reports from his treating physician and surgeon.

{¶ 3} Antony M. George, M.D., board certified in preventive medicine, reported that he had been treating Block "for quite some time." Dr. George's report noted the following: after more than one surgery and several attempts at trigger-point injections, Block "still has significant loss of function"; his right-hand "functional grip strength" is below national standards for employment; his right and left grips tested at 11 and 26 pounds, respectively, and "any construction or roofing job" would "not be possible"; significant scarring has resulted in ankylosis and the loss of motion in Block's right wrist; he has recurring spasms and recurring pain with daily-living activities; and his pinch-grip strength is less than 50 percent "comparatively on repetitive testing." Dr. George recommended that "without any

2

plans for further surgical intervention * * * or any great change in his function * * * it be considered a total loss of use of [Block's] right hand for gainful employment."[1] Dr. George concluded that "treatment is still necessary for palliative reasons and to improve [Block's] level of function for activities of daily living and self care."

{¶ 4} Block also submitted a report from an independent medical examiner, Maria Armstrong Murphy, M.D., who provided her opinion related to ongoing temporary-total-disability ("TTD") compensation and maximum medical improvement.[2] Dr. Murphy opined that her findings support ongoing TTD compensation and that Block cannot return to working on a roof but that he had not yet reached maximum medical improvement for certain allowed conditions, including those affecting the right upper extremity.

{¶ 5} Mark Pellegrino, M.D., board certified in physical medicine and rehabilitation, conducted an independent medical examination of Block at the bureau's request. Dr. Pellegrino reported the following: Block's right wrist is fused with no range of motion present; there is "a right palmar flexion deformity," and Block is unable to flatten his right palm on a level surface; light palpation results in complaints of pain and an exaggerated withdrawal response; scars in the wrist area are sensitive to palpation; "[i]ndividual fingers and right thumb passive range of

---

1. This case involves a claim for a scheduled award of PPD compensation under R.C. 4123.57(B), which is akin to damages and is awarded regardless of earning capacity. *See State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 282, 328 N.E.2d 387 (1975). Dr. George's finding that Block's grip strength is not enough for him to obtain a certain type of job and his opinion that Block's condition should be considered a total loss of use "for gainful employment" suggest that he used the incorrect standard to evaluate Block's loss of use. That is, Dr. George seemed to focus—improperly—on loss of earning capacity. Dr. George may have remedied that shortcoming in his rebuttal report when he concluded that Block's condition should be considered a "loss of use for all practical intents and purposes." *See State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, ¶ 12-14 (adopting the "all practical intents and purposes" test for demonstrating a compensable "loss of use" under R.C. 4123.57(B)). This defect, however, was not raised on appeal and is not dispositive in this appeal.

2. Pursuant to R.C. 4123.57(C), a claimant may receive PPD compensation for losses of use under R.C. 4123.57(B) in addition to TTD compensation under R.C. 4123.56.

motions [are] within normal limits"; Block reports no pinprick sensation throughout the dorsal hand and palm involving digits 4 and 5; he reports a tingling pinprick sensation in the palmar aspect of digits 4 and 5; no light-touch or pinprick abnormalities are noted in the right radial side of the hand, including all of digits 1, 2, and 3; muscle-strength testing is "essentially 5/5" in the right-hand muscles, and Block is able to make the "okay" sign with nearly normal strength; some weakness is noted in the wrist extensor muscles; and Block can move his thumb to his index, middle, ring, and little fingers in a fine-motor pincher grasp.

{¶ 6} Dr. Pellegrino found that Block's "primarily functional limitation pertaining to the right arm is ca[u]sed by fusion of the right wrist" and that "the right hand neurological function * * * remains functionally intact to allow full range of motion without increased pain, grasping and pincher grasp and fine motor movement." Based on these findings, Dr. Pellegrino opined that Block has "functional use of the right hand to perform tasks such as buttoning, holding silverware, hold[ing] and drinking from a cup, and writing." Dr. Pellegrino concluded that "the allowed injury has not resulted in a total permanent loss of use of the right hand"; that Block's "right hand is capable of performing most of the function which it commonly performs despite the allowed conditions in the claim, and the limitations imposed by the allowed conditions"; and that Block's "wrist fusion results in difficulty achieving certain functional positions to enable use of his right hand but this is not to the extent where it renders his right hand useless for all practical purposes."

{¶ 7} Dr. George submitted a rebuttal report identifying "several areas [in Dr. Pellegrino's report] that are not appropriate or consistent with the history or physical exam." Specifically, Dr. George noted the following: Block has less than 50 percent right-hand grip strength, not the "essentially 5/5" that Dr. Pellegrino found, and none of the occupational therapy treatments have led to any increase in Block's grip strength; Block's history and physical exam contradict Dr.

Pellegrino's opinion that Block has strength and functionality intact, full range of motion without increased pain, and the ability to perform fine-motor movement; the more reliable understanding of Block's level of functioning is that his use of his right hand for daily activities has become very limited and that he has therefore become a left-handed person; and there is no job that Block would be qualified for under vocational rehabilitation. Dr. George concluded that someone need not have "absolute total loss or no use of a hand for it to be designated as a loss of use for all practical intents and purposes." Dr. George also concluded that Block's loss of use "is not the same thing as an amputation or paralysis but even with the ankylosis as a result of the surgery it meets this requirement."

{¶ 8} A district hearing officer granted Block's request for scheduled-loss compensation, but a staff hearing officer ("SHO") vacated that order on the commission's appeal. The SHO denied Block's request based on two findings, which the SHO referred to as "factors": (1) Block "ha[d] not presented proof that the functional limitations in the use of his right hand are permanent" and (2) Dr. Pellegrino's report "documents that [Block] retains some function of the hand and has not lost function in the hand for all practical purposes." Further administrative review was denied.

{¶ 9} Block filed a complaint for a writ of mandamus in the Tenth District Court of Appeals. The court of appeals, finding the reports of Dr. George and Dr. Pellegrino to be "some evidence" supporting the commission's decision, denied the writ. 2022-Ohio-4474, ¶ 10-13.

{¶ 10} This cause is now before us on Block's appeal as of right.

## ANALYSIS

{¶ 11} In a direct appeal of a mandamus action originating in a court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967). Block is entitled to a writ of mandamus if he shows by clear and convincing

evidence that he has a clear legal right to the requested relief, that the commission has a clear legal duty to provide it, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. A writ of mandamus may lie when there is a legal basis to compel the commission to perform its clear legal duty under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997). Neither this court nor the court of appeals may substitute its judgment for the commission's in evaluating the evidence. *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 476, 733 N.E.2d 589 (2000).

{¶ 12} R.C. 4123.57 governs PPD compensation. R.C. 4123.57(B) sets forth a compensation schedule, payable at the statewide average weekly wage for a specified number of weeks, for losses of enumerated body parts (or functions, such as hearing and sight). For purposes of scheduled-loss compensation, "loss" includes amputation or severance as well as a "loss of use" of the affected body part that is both permanent and total, to the same effect and extent as if the body part had been physically removed. *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403-404, 390 N.E.2d 1190 (1979), citing *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 67, 322 N.E.2d 660 (1975).

{¶ 13} Block argues that because the commission's order specifies that the denial of compensation was based on two findings, those two findings must both be supported by some evidence in the record. He provides no support for this proposition, and the Tenth District has consistently held to the contrary. *See, e.g.,*

6

*State ex rel. Davis-Hodges v. Indus. Comm.*, 10th Dist. Franklin No. 10AP-183, 2010-Ohio-5871, ¶ 41 ("Where the commission provides an alternative rationale for its determination which withstands the scrutiny of mandamus review and provides an independent basis for the commission's decision, the fact that the commission incorrectly applied the law in a separate portion of the order does not constitute grounds for the granting of a writ of mandamus"). We reject Block's argument. If one finding provides an independent basis for the commission's decision and that finding is supported by some evidence, we will not disturb the order as manifesting an abuse of discretion.

{¶ 14} The first of the two findings that the commission cited in denying Block's request for compensation is that he had "not presented proof that the functional limitations in the use of his right hand are permanent."

{¶ 15} There is no statutory definition of "permanent" in Ohio's workers' compensation act, and the term has different meanings as applied to different forms of compensation. *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*, 121 Ohio St.3d 341, 2009-Ohio-1219, 904 N.E.2d 521, ¶ 19-20, citing *State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550, ¶ 8. For example, "permanency" in the context of TTD compensation "means that the condition will never improve to the point where the claimant can resume his or her former job." *Advantage Tank Lines* at ¶ 8. TTD compensation can be terminated on a basis of permanency only when the claimant has reached maximum medical improvement. *DaimlerChrysler Corp.* at ¶ 24.

{¶ 16} On the other hand, PPD compensation "is completely unrelated to a claimant's ability to return to his or her former position. It is instead akin to a damages award."[3] *Advantage Tank Lines* at ¶ 9. In this context, which includes

---

3. For this reason—and contrary to the commission's argument on appeal—Dr. Murphy's opinion that Block has not yet reached maximum medical improvement in the context of ongoing TTD

scheduled loss-of-use awards under R.C. 4123.57(B), " 'permanency' always represents a level *above* which a claimant's condition will never improve" and "also represents the level *to* which a claimant's condition can improve, should the condition temporarily worsen." (Emphasis sic.) *Advantage Tank Lines* at ¶ 9.

{¶ 17} According to Block, there are a "multitude" of medical and surgical records before us that contradict the commission's finding that he presented no proof of permanency. The evidence Block cites, however, demonstrates only the extent of his physical limitations—e.g., that he experiences pain, atrophy, tremoring, and limited range of motion in the right hand. Block appears to posit that a finding of permanency is supported solely by the amount of time that has passed since his injury, during which time he has undergone multiple surgeries and years of treatment. And although evidence of permanency may be shown by inference, *see generally State ex rel. Phillips v. Indus. Comm.*, 5 Ohio St.3d 202, 449 N.E.2d 1307 (1983), it is noteworthy that none of the medical reports submitted by Block explicitly opine that his limitations have reached a level of permanency.

{¶ 18} Dr. George arguably addressed the permanency of Block's loss of use when he wrote, "It is at this time I believe that without any plans for further surgical intervention * * * or any great change in his function, I am recommending that it be considered a total loss of use of his right hand for gainful employment." He continued, "It is with a significant amount of effort and persistence by the medical parties involved as well as the patient that we have arrived at this point. We believe that treatment is still necessary for palliative reasons and to improve his level of function for activities of daily living and self care in the hopes to minimize or eliminate the need for narcotic pain medicine if possible." In his rebuttal report, Dr. George also noted that Block's occupational therapist had "decided that any

---

compensation is unrelated to a determination that the loss of the use of Block's right hand is not permanent.

further progressive strengthening would be of no value since none of their treatments had led to any increase in his grip strength."

{¶ 19} However, "the commission has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. Here, that leeway permitted the commission to conclude that Dr. George's report is not evidence of a permanent loss of use—i.e., that the report does not offer proof that Block's condition has reached a level above which it will *never* improve. *See Advantage Tank Lines*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550, at ¶ 9.

{¶ 20} Additionally, Block argues that the commission abused its discretion by failing to identify which theory of loss was the focus of its finding regarding proof of permanency. Loss of a hand under R.C. 4123.57(B) may be shown under a "flat loss" theory or a "two fingers plus" theory. *See State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244, 2004-Ohio-2589, 809 N.E.2d 15, ¶ 24. However, because the commission found no evidence of a *permanent* loss of use, it is unclear how the *theory* of the underlying loss is necessary or relevant.

{¶ 21} Block further contends that the commission violated its duty under *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206, 567 N.E.2d 245 (1991), to "specifically state what evidence has been relied upon to reach its conclusion" that Block did not present proof of permanency. Again, because the commission found no evidence of permanency, it is unclear what the commission should have "specifically state[d]" had been relied upon. To be sure, the commission did express that "[a]ll proof on file was reviewed and considered."

{¶ 22} For the foregoing reasons, we conclude that the commission did not abuse its discretion in finding that Block had failed to present proof of a permanent loss of the use of his right hand.

**{¶ 23}** Turning to the second of the two findings that the commission cited in denying Block's request for scheduled-loss compensation, the commission found that Dr. Pellegrino's report "documents that [Block] retains some function of the hand and has not lost function in the hand for all practical purposes." Block contends that Dr. Pellegrino's report cannot constitute some evidence to support the commission's decision, because it is internally inconsistent and/or equivocal. However, the commission's finding that Block failed to present proof of a *permanent* loss of use provides an independent basis for the commission's decision, and we have concluded that the commission did not abuse its discretion in making this finding. It is therefore unnecessary to determine whether the commission could rely on Dr. Pellegrino's report as evidence that Block did not establish a *total* loss of use, and we decline to do so.[4]

**CONCLUSION**

**{¶ 24}** Because some evidence in the record supports the commission's decision denying Block's request for compensation for the loss of the use of his right hand, the commission did not abuse its discretion and the Tenth District Court of Appeals correctly denied the writ. Accordingly, we affirm the Tenth District's judgment denying Block's complaint for a writ of mandamus.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

———————————

Denio A. Leone, L.L.C., and Denio A. Leone, for appellant.

———————————

4. It is likewise unnecessary to address the commission's argument, in defense of the Tenth District's judgment, that Block is not entitled to compensation because the allowed conditions are in the wrist, not the hand. This was not a stated reason for the commission's decision to deny compensation, and although the Tenth District magistrate noted that Block's "allowed conditions and ankylosis are in his wrist, not his hand," 2022-Ohio-4474 at ¶ 57, the court did not uphold the commission's denial on that basis.

Dave Yost, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee.

_____