[Cite as *SER R.R. Donnelley & Sons Co. v. Indus. Comm.*, 2022-Ohio-4774.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. R.R. Donnelley & Sons Co., | : | |
| Relator, | : | No. 21AP-119 |
| v. | : | (REGULAR CALENDAR) |
| The Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Kegler, Brown, Hill & Ritter*, *Randall W. Mikes*, and *David M. McCarty* for relator R.R. Donnelley & Sons Co.

**On brief:** *Dave Yost*, Attorney General, and *Douglas R. Unver* for respondent Industrial Commission of Ohio.

**On brief:** *Scott W. Schiff & Associates, Co.*, and *Kurt A. Knisley* for respondent Linda E. Brokaw.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, R.R. Donnelley & Sons Co., brought this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("Commission"), to vacate its order awarding scheduled loss benefits under R.C. 4123.57(B) to respondent, Linda E. Brokaw and denying relator's request to terminate temporary total disability ("TTD") for Ms. Brokaw's failure to reach maximum medical improvement ("MMI"). Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.

{¶ 2}    As reflected in the facts given in the magistrate's decision, Ms. Brokaw was injured on October 17, 2017, during the course of employment with her employer and a TTD claim was allowed for a number of conditions, the most pertinent here being those to her right shoulder and right upper extremity.  Employer filed to terminate the TTD benefit on August 13, 2020.  A subsequent medical report opined that Ms. Brokaw had not reached MMI because no intrathecal therapy for pain had yet been attempted.  After administrative hearings, the Commission affirmed an order granting Ms. Brokaw's motion for scheduled loss of use of her right arm and finding, based on several medical reports, that she had lost functional use of her right upper extremity.  In addition, the order granted her request to authorize treatment with intrathecal pain medication in an attempt to relieve the pain that affected her right upper extremity.  The order also denied the employer's motion to terminate TTD based on a finding of MMI.  The magistrate's decision attached below provides a more detailed description of the medical and procedural history of the claim.

{¶ 3}    After exhausting the administrative appeal process, employer filed a complaint for a writ of mandamus.  The magistrate has rendered a decision that includes findings of fact and conclusions of law.  He recommends denying employer's request for a writ of mandamus.  Employer has filed objections to the magistrate's decision.

{¶ 4}    Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio,* 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman,* 70 Ohio St.2d 274, 275 (1982).  "A clear legal right exists when a [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 5}    This court will not determine that the Commission abused its discretion when there is some evidence in the record to support the Commission's finding.  *State ex rel. Rouch v. Eagle Tool & Machine Co.,* 26 Ohio St.3d 197, 198 (1986); *State ex rel. Barnett v. Indus. Comm. of Ohio,* 10th Dist. No. 14AP-628, 2015-Ohio-3898, ¶ 9.  The "some evidence"

standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts."  *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992).

{¶ 6}    Employer's first objection states: "The Magistrate erred in finding that the September 1, 2020 report of Dr. McDowell was 'some evidence' to support a conclusion that additional treatment could improve the function of Claimant's right arm but not to the extent to defeat a finding of total loss of use of that arm."  (Apr. 21, 2022 Am. Objs. at 4.) The magistrate summarized and responded to employer's argument as follows:

> The employer asserts that the SHO erred as a matter of law in awarding a permanent loss of use of the right arm while at the same time finding that additional treatment provided the potential for improved function of the same arm.  The employer points out that there was no evidence that addresses or supports a conclusion that any functional improvement afforded by the intrathecal injections will fall short of the type of functional improvement that would nullify the finding of a total loss of use.  Without such evidence, the employer claims, the conclusion of a permanent and total loss of function sufficient to award scheduled loss benefits cannot legally coexist with a conclusion of an opportunity for increased function sufficient to defeat a finding of MMI.
>
> The magistrate finds the employer's arguments without merit. There is no necessary contradiction with the SHO's simultaneously finding a permanent loss of use of claimant's right arm while also continuing to pay TTD based on claimant's not having reached MMI due to the granting of intrathecal injections and potential for improved functioning.  These findings may coexist, and the employer cites no authority that they are mutually exclusive.  Claimant could still qualify for the permanent loss of use of her arm even if the possibility existed that she could gain some level of function through further treatment.  Claimant could also continue to qualify for TTD compensation if she had not achieved MMI due to the fact that she had not reached a treatment plateau and there still existed the possibility of functional change based on further treatment.

(Apr. 7, 2022 Mag.'s Decision at 8.)

{¶ 7}    Nor has employer, in its argument supporting the foregoing objection, pointed to any authority to support its assertion that the two findings—one, that additional

treatment could improve the function of Ms. Brokaw's right arm, and two, that she suffered a permanent loss of use of that arm—are mutually exclusive, and that a finding of the latter "defeat[s]" the former.  (Apr. 21, 2022 Am. Objs. at 4.)

{¶ 8}    The Ohio Administrative Code defines "maximum medical improvement" as:

> a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

Ohio Adm.Code 4121-3-32(A)(1).

{¶ 9}    Treatment notes from an August 31, 2020 visit state that "[c]ompared to the last visit the pain is worse" and "continuous."  (Aug. 31, 2020 Office Note, SR 38.) Dr. McDowell later opined: "I do not believe that this injured worker has reached MMI, as she has not tried intrathecal therapy." (Sep. 1, 2020 Report of Dr. McDowell SR 41.)  Thus, the report is some evidence upon which the Commission could base its conclusion that Ms. Brokaw had not reached MMI.

{¶ 10}    Employer also asserts that in this report "Dr. McDowell indicated that Claimant could not be deemed MMI until she underwent the intrathecal injections. Nowhere in this report does he indicate that these injections will improve her function to any degree. For the hearing officer to conclude otherwise requires that he impermissibly come to his own medical conclusion."  (Apr. 21, 2022 Am. Objs. at 10.)

{¶ 11}    But the office notes for the August 31, 2020 visit indicate the report was prepared to expressly opine that the intrathecal injections "could give her significant pain relief that improves her function." (Aug. 31, 2020 Office Note, SR 40.) Employer's assertion otherwise is incorrect, as is its assertion that Dr. McDowell's report "is simply not 'some evidence' to support a finding that the injections will improve Claimant's function at all, let alone an extent which does not contradict the finding of total loss of use." (Apr. 21, 2022 Am. Objs. at 10.)  The first objection is overruled.

{¶ 12}    Employer's second objection states: "The Magistrate erred in presuming a basis for the staff hearing officer's decision which was not stated in the order."  (Apr. 21, 2022 Am. Objs. at 4.)  More specifically, employer argues: "The hearing officer did not state

in his order the reasoning assumed by the Magistrate, that being that this alleged improvement would amount to anything more than residual functioning." (Apr. 21, 2022 Am. Objs. at 11.) Although not specified by employer, we presume that its objection refers to the following statement by the magistrate, as it is the only instance of the SHO's reasoning the magistrate mentions that employer has quoted (with underlining for emphasis) in its objections: "The commission was within its discretion to conclude that claimant's functioning could improve with intrathecal injections yet never improve beyond residual functioning, which would still qualify her loss of use as permanent and complete." (Apr. 7, 2022 Mag.'s Decision at 8.)

{¶ 13} Contrary to employer's objection, the SHO did state in the order the reasoning the magistrate references: "It is found [that] the Injured Worker does remain temporarily and totally disabled from the physical conditions allowed in this claim. This is based primarily on the granting of the intrathecal injections [on] this date, and the potential for improved functioning. This is supported by the 09/01/2020 report of Dr. McDowell." (Jan. 19, 2021 SHO Order, SR 67.) Thus, employer is incorrect that the magistrate assumed a reasoning process not specifically stated in the order. The second objection is overruled.

{¶ 14} Following our independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, the objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

BEATTY BLUNT and McGRATH, JJ., concur.

————————————

A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel.                                                   :
R.R. Donnelley & Sons Company,
                                                               :
            Relator,
                                                               :
v.                                                                        No. 21AP-119
                                                               :
Industrial Commission of Ohio et al.,                                (REGULAR CALENDAR)
                                                               :
            Respondents.
                                                               :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 7, 2022

---

*Kegler, Brown, Hill & Ritter, Randall W. Mikes,* and *David M. McCarty*, for relator.

*Dave Yost,* Attorney General, and *Cynthia Albrecht,* for respondent Industrial Commission of Ohio.

*Scott W. Schiff and Associates, Co.,* and *Kurt A. Knisley,* for respondent Linda E. Brokaw.

---

IN MANDAMUS

{¶ 15} Relator, R.R. Donnelley & Sons Company ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that awarded scheduled loss

benefits, pursuant to R.C. 4123.57(B), to respondent Linda E. Brokaw ("claimant") and denied the employer's request to terminate temporary total disability ("TTD") due to her failure to reach maximum medical improvement ("MMI").

Findings of Fact:

{¶ 16} 1. Claimant was injured on October 17, 2017, during the course of her employment with the employer, and her claim was allowed for the following conditions: right shoulder sprain; right shoulder arthrofibrosis; chronic regional pain syndrome of the right upper extremity; substantial aggravation of major depressive disorder, recurrent, severe, without psychotic features; substantial aggravation of pre-existing unspecified anxiety disorder; and loss of use of right upper extremity. Subsequently, claimant was granted TTD compensation.

{¶ 17} 2. On April 7, 2020, Donato Borrillo, M.D., issued a report.

{¶ 18} 3. On April 20, 2020, Dr. Borrillo issued a report.

{¶ 19} 4. On May 14, 2020, Gladstone McDowell, M.D., issued a report.

{¶ 20} 5. On May 29, 2020, Gerald Steiman, M.D., issued a report.

{¶ 21} 6. On July 1, 2020, claimant filed a motion for scheduled loss of use of her right arm.

{¶ 22} 7. On July 24, 2020, claimant requested authorization for a trial of intrathecal pain medication.

{¶ 23} 8. On August 7, 2020, Dr. Steiman issued a report.

{¶ 24} 9. On August 13, 2020, the employer filed a motion to terminate TTD.

{¶ 25} 10. On September 1, 2020, Dr. McDowell issued a report, in which he indicated that claimant had not reached MMI, as she has not tried intrathecal therapy for pain. Dr. McDowell opined that claimant could not be labeled as MMI when there are safe and effective pain-management measures that can be attempted, and intrathecal pain management must be tried before the patient can be labeled MMI.

{¶ 26} 11. On September 5, 2020, Dr. Borrillo issued a report.

{¶ 27} 12. On November 5, 2020, a hearing was held before a district hearing officer ("DHO"), and in an order mailed November 17, 2020, the DHO found, in pertinent part,

the following: (1) claimant's request for trial of intrathecal pain medication is granted; (2) claimant's request for scheduled loss of use award is granted; (3) as a result of the allowed conditions, claimant has sustained a permanent loss of use of the right upper extremity for all practical intents and purposes, due to the allowed conditions, based on the April 7 and September 5, 2020, reports of Dr. Borrillo; and (4) the employer's motion to terminate TTD is granted, based on claimant's reaching MMI, in that her condition will, with reasonable probability, continue for an indefinite period of time that the claimant has reached a treatment plateau at which no fundamental, functional, or physiological change can be expected, based on the August 7, 2020, report of Dr. Steiman. Both parties appealed.

{¶ 28} 13. On January 19, 2021, a hearing was held before a staff hearing officer ("SHO"), and in an order mailed January 22, 2021, the SHO found, in pertinent part, the following: (1) claimant's motion for scheduled loss of use of right arm is granted; (2) claimant has, for all practical purposes, lost functional use of her right upper extremity due to the allowed conditions, based on the April 7, 2020, report of Dr. Borrillo and the August 7, 2020, report of Dr. Steiman; (3) claimant's July 24, 2020, request for authorization for a trial of intrathecal pain medication is granted, as it is medically reasonable, necessary, and an appropriate form of treatment in the attempt to provide relief from the complex regional pain syndrome condition of the right upper extremity, based on the May 14 and September 1, 2020, reports of Dr. McDowell; (4) the employer's motion to terminate TTD based upon MMI is denied; and (5) claimant remains TTD from the allowed physical conditions, based primarily on the granting of the intrathecal injections this date and the potential for improved functioning, based on the September 1, 2020, report of Dr. McDowell.

{¶ 29} 14. The employer filed an appeal of the SHO's order, which the commission refused on February 10, 2021.

{¶ 30} 15. The employer filed a request for reconsideration, which the commission denied in an order mailed March 11, 2021.

{¶ 31} 16. On March 24, 2021, the employer filed a complaint in mandamus.

Conclusions of Law and Discussion:

{¶ 32} The magistrate recommends this court deny claimant's request for a writ of mandamus.

{¶ 33} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 34} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 35} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 36} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm or leg. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364.

{¶ 37} To qualify for compensation under R.C. 4123.57(B), the loss of use need not be absolute if the claimant has "suffered the permanent loss of use of the injured bodily

member for all practical intents and purposes." *Id.*, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. However, a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function. *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *Alcoa Bldg. Prods.* "[T]he pivotal question is how much function remains." *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, ¶ 15. In *Alcoa Bldg. Prods.*, the Supreme Court of Ohio noted that evidence indicated the claimant continued to use what remained of his impaired limb for some minor functions: pushing open a car door, and tucking paperwork between the upper arm and chest; however, these minor residual functions did not preclude a scheduled award. *Id.* at ¶ 6.

{¶ 38} An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547.

{¶ 39} Ohio Adm.Code 4121-3-32(A)(1) provides the definition of MMI for workers' compensation purposes:

> "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

{¶ 40} In *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*, 121 Ohio St.3d 341, 2009-Ohio-1219, the Supreme Court of Ohio discussed in detail the concept of permanency with regard to MMI in the context of a TTD case:

> As early as 1944, this court articulated a definition of permanency that foreshadowed the definition of MMI now in the Administrative Code. *Logsdon v. Indus. Comm.* (1944), 143 Ohio St. 508, 28 O.O. 429, 57 N.E.2d 75, held at paragraph two of the syllabus:
>
> "The term 'permanent' as applied to disability under the workmen's compensation law does not mean that such disability must necessarily continue for the life of a claimant, but that it will, with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom."

Common to both *Logsdon* and Ohio Adm.Code 4121-3-32(A)(1) is a probable lack of improvement, which, in the context of the Administrative Code definition, clearly refers to the underlying medical condition. * * *

* * * In *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St. 3d 31, 33, 25 Ohio B. 26, 494 N.E.2d 1125, we held:

"[I]n the consideration of the permanency of a disability, the commission need not determine whether the claimant could return to his former position of employment. The commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment."

*Vulcan* was followed by *State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm.* (1990), 48 Ohio St. 3d 25, 548 N.E.2d 928. *General American* reaffirmed *Vulcan*'s definition, explaining that "[a] claimant's permanent inability to return to his former position of employment does not mean the claimant's medical condition will not improve." Id. at 26.

At approximately the same time, the Court of Appeals for Franklin County decided *State ex rel. Matlack, Inc. v. Indus. Comm.* (1991), 73 Ohio App. 3d 648, 655, 598 N.E.2d 121, which ruled:

"[T]emporary total benefits will be paid during the healing and treatment period for the condition until the claimant has reached some certain level of stabilization. When this stabilization has been reached and no further improvement is probable, then the condition is permanent * * *." (Citation omitted.)

In *State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler* (1990), 55 Ohio St.3d 109, 110, 564 N.E.2d 76, we stated that "[p]ermanency relates to the perceived longevity of the condition" and treated "permanency" and "MMI" as synonymous. *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 653, 640 N.E.2d 815, added that "so long as the claimant's condition has not stabilized, and further medical improvement can be expected, TTD benefits are payable."

In contrast to these cases, Chrysler points to *State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005 Ohio 5829, 836 N.E.2d 550. At issue was the claimant's ability to concurrently receive permanent partial and temporary total compensation for the same condition. The employer argued that it was incongruous to simultaneously pay compensation for both permanent and a temporary disability for the same condition.

We affirmed the ability to receive dual payment under the right circumstances. We explained that the two forms of compensation focused on completely different things: while temporary total disability compensation centered on the claimant's ability to return to the former position of employment, permanent partial disability compensation was unconcerned with a claimant's ability to work. We also noted that "permanency" had a different meaning as applied to each form of compensation. In describing permanency in the context of temporary total disability, we wrote:

"TTC awards are based exclusively on a claimant's ability to return to his or her former position of employment. In this context, a determination that a disability is permanent means that the condition will never improve to the point where the claimant can resume his or her former job. Thus, when this determination is made, the disability is no longer considered temporary, so TTC is terminated." (Emphasis sic; citations omitted.) *Advantage Tank Lines*, 107 Ohio St.3d 16, 2005 Ohio 5829, 836 N.E.2d 550, P 8.

Chrysler cites this passage as proof that "permanency" and "MMI" remain distinct and that temporary total disability compensation must cease if either of those conditions is met. The court of appeals rejected that contention:

"Although *Advantage* does contain dicta that seems to support relator's argument, *Advantage* did not directly address the issue presented here. We agree with the magistrate that the issue before us was directly addressed in *Vulcan* wherein the court expressly held that '[t]he commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment.' *Vulcan* [25 Ohio St.3d] at 33 [25 OBR 26, 494

> N.E.2d 1125]. Although *Advantage* was decided after *Vulcan*, the court in *Advantage* did not discuss, let alone overrule, *Vulcan*. Moreover, as previously noted, the language relator relies on in *Advantage* is dicta. The holding in *Vulcan* is controlling." Franklin App. No. 06AP-968, 2007 Ohio 4799, at P 4.

*Id*. at ¶ 9-24.

{¶ 41} In the present case, the employer does not dispute that there was some evidence to support the SHO's finding that claimant has, for all practical purposes, lost functional use of her right upper extremity due to the allowed conditions. The employer also does not dispute there was some evidence to support the ongoing payment of TTD based upon the claimant's having not reached MMI due to the granting of intrathecal injections and the potential for improved functioning. Instead, the employer argues that, under Ohio law, a finding of permanency sufficient to award a total loss of use cannot coexist with a finding that additional treatment could improve the function of the body part at issue. The employer asserts that the SHO erred as a matter of law in awarding a permanent loss of use of the right arm while at the same time finding that additional treatment provided the potential for improved function of the same arm. The employer points out that there was no evidence that addresses or supports a conclusion that any functional improvement afforded by the intrathecal injections will fall short of the type of functional improvement that would nullify the finding of a total loss of use. Without such evidence, the employer claims, the conclusion of a permanent and total loss of function sufficient to award scheduled loss benefits cannot legally coexist with a conclusion of an opportunity for increased function sufficient to defeat a finding of MMI.

{¶ 42} The magistrate finds the employer's arguments without merit. There is no necessary contradiction with the SHO's simultaneously finding a permanent loss of use of claimant's right arm while also continuing to pay TTD based on claimant's not having reached MMI due to the granting of intrathecal injections and potential for improved functioning. These findings may coexist, and the employer cites no authority that they are necessarily mutually exclusive. Claimant could still qualify for the permanent loss of use of her arm even if the possibility existed that she could gain some level of function through further treatment. Claimant could also continue to qualify for TTD compensation if she had

not achieved MMI due to the fact that she had not reached a treatment plateau and there still existed the possibility of functional change based on further treatment. The commission was within its discretion to conclude that claimant's functioning could improve with intrathecal injections yet never improve beyond residual functioning, which would still qualify her loss of use as permanent and complete. *See Alcoa Bldg. Prods.* (a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function). This is particularly true given Dr. McDowell indicated in his September 1, 2020, report that the intrathecal injections were for pain management and not to improve any underlying physical condition. Also, neither Dr. McDowell nor any other medical provider opined that the intrathecal injections would alleviate claimant's allowed conditions to such a degree that they would not be permanent or complete. Based on the medical evidence, the commission could reasonably conclude that any pain relief from the injections could improve her functioning to a certain degree, but never to the point where the remaining function was above the threshold for the loss to still be deemed complete and permanent. Therefore, the commission had some evidence to support both a loss of use award and the continuance of TTD, and these two findings are capable of being reconciled and not necessarily contradictory.

{¶ 43} Accordingly, it is the magistrate's decision that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).