[Cite as *State ex rel. Presswood v. Indus. Comm.*, 2023-Ohio-4392.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Charles Presswood, | : | |
| Relator, | : | |
| | : | No. 22AP-510 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on December 5, 2023

---

**On brief:** *Casper, Casper and Casper LLC*, and *Douglas W. Casper*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Charles Presswood, filed this original action in mandamus seeking a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its orders denying his application for temporary total disability ("TTD") compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court grant Presswood's motion for summary judgment and grant his request for a writ of mandamus. For the following reasons, we grant in part Presswood's motion for summary judgment and grant a limited writ of mandamus.

{¶ 3} The commission has filed the following objection to the magistrate's decision:

> The magistrate erred in finding that Presswood is entitled to judgment as a matter of law and recommending that the Court grant a full writ of mandamus without an analysis by the commission as to whether an MMI finding impacts a TTD award pursuant to R.C. 4123.56(A) and (F).

{¶ 4} Presswood was employed as a laborer for respondent CRG Residential when he suffered injuries due to a fall on May 23, 2016. As detailed in the magistrate's decision, a workers' compensation claim was allowed for multiple physical and psychological conditions. Presswood received TTD for his allowed physical conditions until he reached maximum medical improvement ("MMI") on March 20, 2019, and received TTD for his allowed psychological conditions until he reached MMI on July 27, 2020. Presswood did not return to employment after having been found to have reached MMI on his allowed conditions.

{¶ 5} Presswood filed an application for permanent total disability ("PTD") compensation on September 28, 2020. In an order mailed May 20, 2021, a commission staff hearing officer ("SHO") denied Presswood's PTD application, concluding Presswood had reached MMI for all allowed conditions and could perform sedentary work.

{¶ 6} On June 2, 2021, the Ohio Bureau of Workers' Compensation ("BWC") approved surgery for the removal of previously placed hardware from Presswood's foot. The surgery was performed on June 4, 2021. On October 22, 2021, Presswood filed an application for TTD compensation beginning June 4, 2021, supported by a physician's report indicating Presswood was unable to engage in employment following the surgery. A commission district hearing officer ("DHO") denied Presswood's application for TTD compensation, finding Presswood was not working prior to the surgery and therefore had no lost wages due to the surgery. An SHO affirmed the DHO's order, similarly concluding Presswood was not entitled to TTD compensation because he was not working at the time of surgery and therefore had no lost wages due to the allowed conditions. Presswood appealed the denial to the commission, which denied the appeal and a subsequent request for reconsideration. Presswood then filed a complaint in mandamus in this court.

{¶ 7} A relator seeking a writ of mandamus as a remedy from a commission decision must demonstrate that he or she has a clear legal right to the relief sought and that

the commission has a clear legal duty to provide such relief. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). A clear legal right to a writ of mandamus exists when the commission abuses its discretion by entering an order not supported by some evidence. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986).

{¶ 8} Presswood moved for summary judgment on his mandamus claim asserting he was entitled to TTD compensation because he was unable to work following the surgery as a direct result of reasons related to his allowed conditions. Citing this court's decision in *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, Presswood argued his reasons for not working prior to surgery were irrelevant to the determination of whether he was eligible for TTD after surgery, because the surgery was related to his allowed conditions. The magistrate found Presswood's argument persuasive, concluding this case was substantially similar to *Autozone* and that regardless of the reason Presswood was not working prior to surgery, his not working after that date was directly attributable to the surgery, which was related to his allowed conditions. The magistrate recommended we grant Presswood's motion for summary judgment and his petition for a writ of mandamus.

{¶ 9} In its objection to the magistrate's decision, the commission argues this case differs from *Autozone* because Presswood previously had been found to have reached MMI on his allowed conditions. The commission notes that, under R.C. 4123.56(A), a finding of MMI terminates TTD compensation. Therefore, the commission argues, it must be given an opportunity to evaluate whether Presswood's subsequent surgery impacts the prior MMI finding and whether he is entitled to TTD compensation under R.C. 4123.56(A) and (F) following surgery.

{¶ 10} In *Autozone*, which was decided after the commission denied Presswood's application for TTD compensation, we held that "not working—alone—is not dispositive [of whether a claimant is eligible for TTD compensation], but rather requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease." *Autozone* at ¶ 33. "So long as that causal link is established, and he or she is otherwise qualified, the claimant is eligible for TTD compensation." *Id.* Moreover, "R.C. 4123.56(F) requires us to review only whether the

claimant * * * was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified." *Id.* at ¶ 34. In this case, both the DHO and SHO concluded that Presswood was not eligible for TTD compensation because he was not working and had not attempted to return to the workforce or try vocational rehabilitation *prior to* the June 4, 2021 surgery, when he only sought TTD compensation for the period from June 4, 2021 forward. We agree with the magistrate's conclusion that under *Autozone* the reason Presswood was not working prior to the date of surgery is not relevant for determining his eligibility for TTD compensation for the period on and after surgery. Presswood has demonstrated there is no genuine issue of material fact, and he is entitled to judgment as a matter of law on his request for a writ of mandamus ordering the commission to vacate its denial of his application for TTD compensation. Therefore, we grant in part Presswood's motion for summary judgment to the extent he seeks a writ of mandamus ordering the commission to vacate the orders denying his application for TTD compensation.

{¶ 11} We disagree, however, as to whether Presswood is entitled to a writ of mandamus ordering the commission to grant his application for TTD compensation. Under R.C. 4123.56(F) there are two operative questions in determining eligibility for TTD compensation: "(1) whether [the claimant] is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether [the claimant] is otherwise qualified to receive TTD compensation." *Autozone* at ¶ 35. In *Autozone*, we held that the phrase "otherwise qualified" in the first sentence of R.C. 4123.56(F) referred back to the disqualifications set forth in R.C. 4123.56(A), including the claimant having reached MMI. *Id.* at ¶ 29. We further noted that even if a claimant was unable to work as the direct result of an impairment arising from an injury, the claimant was not otherwise qualified to receive TTD compensation if he had reached MMI. *Id.*, citing *State ex rel. R.R. Donnelley & Sons Co. v. Indus. Comm.*, 10th Dist. No. 21AP-119, 2022-Ohio-4774, ¶ 42.

{¶ 12} Presswood had been found to have reached MMI on his physical conditions in 2019 and on his psychological conditions in 2020. Although both the DHO and SHO acknowledged the MMI findings in their orders, neither hearing officer addressed whether the subsequent approved surgery affected the prior MMI findings or whether the prior MMI findings affected Presswood's eligibility for TTD compensation. Accordingly, under these

circumstances, we find it appropriate to remand to the commission to resolve those questions in the first instance and determine Presswood's eligibility for TTD compensation consistent with the principles set forth in *Autozone* and in this decision. *See State ex rel. Simon v. Indus. Comm.*, 71 Ohio St.3d 186, 189 (1994) (holding that "the appellate court acted properly in letting the commission determine whether [a physician's] report supports or negates a finding of maximum medical improvement"). Therefore, we deny in part Presswood's motion for summary judgment to the extent he seeks a writ of mandamus ordering the commission to grant his application for TTD compensation.

{¶ 13} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We adopt the findings of fact contained in the magistrate's decision, and modify the conclusions of law therein, in accordance with our conclusions above. For the reasons explained above, we sustain the commission's objection to the magistrate's decision, grant in part and deny in part Presswood's motion for summary judgment, and grant a limited writ of mandamus ordering the commission to vacate its orders denying Presswood's application for TTD compensation and determine whether Presswood is eligible for TTD compensation.

*Objection sustained*;
*motion for summary judgment granted in part and denied in part*;
*limited writ of mandamus granted.*

LUPER SCHUSTER and LELAND, JJ., concur.

————————

**[Cite as *State ex rel. Presswood v. Indus. Comm.*, 2023-Ohio-4392.]**

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Charles Presswood, | : | |
| Relator, | : | |
| v. | : | No. 22AP-510 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E'S   D E C I S I O N

Rendered on June 15, 2023

*Casper, Casper and Casper, LLC*, and Douglas W. Casper, for relator.

*Dave Yost,* Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

### IN MANDAMUS
### ON RELATOR'S MOTION FOR
### SUMMARY JUDGMENT

{¶ 14} Relator, Charles Presswood ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his request for temporary total disability ("TTD") compensation. Claimant has filed a March 21, 2023, motion for summary judgment.

Findings of Fact:

{¶ 15}  1. On May 23, 2016, claimant sustained an injury in the course of and arising out of his employment with respondent CRG Residential ("employer") when he tripped over a box and fell. His workers' compensation claim was allowed for the following conditions: closed oblique fracture distal fibula, left; radial head fracture with closed dislocation, left; lateral dislocation of left ulnohumeral joint; displaced bilmalleolar fracture of left lower leg; dislocation of tarsometatarsal joint of left foot; displaced fracture of second metatarsal bone, left foot; sprain of tibiofibular ligament of left ankle; displaced fracture of third metatarsal bone, left foot; displaced fracture of fourth metatarsal bone, left foot; displaced fracture of cuboid bone of left foot closed; post-traumatic midfoot arthritis, left foot; painful hardware, left foot; neuralgia left foot; major depressive disorder, generalized anxiety disorder; and a pain disorder associated with psychological factors. He had several surgeries addressing the allowed conditions.

{¶ 16}  2. Claimant was granted TTD compensation based upon the allowed physical conditions until he reached maximum medical improvement ("MMI") on March 20, 2019, based on the February 20, 2019, medical report of Dr. Alan Kohlhaas, M.D., who opined that claimant was capable of performing sedentary work with restrictions.

{¶ 17}  3. Claimant continued to receive TTD for his psychological conditions until he reached MMI on July 27, 2020, based upon the June 23, 2020, medical report of Donald Tosi, Ph.D., who opined that claimant could work with restrictions.

{¶ 18}  4. Claimant did not attempt to return to employment.

{¶ 19}  5. On September 28, 2020, claimant filed an application for permanent and total disability ("PTD") compensation.

{¶ 20}  6. E. Gregory Fisher, M.D., examined claimant with regard to PTD for his allowed physical conditions, and in a December 17, 2020, report, he opined that claimant was capable of sedentary work.

{¶ 21}  7. Kenneth Manges, Ph.D., examined claimant with regard to PTD for his allowed psychological conditions, and in a January 10, 2021, report, he opined that claimant was capable of work with limitations.

{¶ 22}  8. During the pendency of the PTD application, claimant continued medical treatment for foot and ankle issues.

{¶ 23} 9. On May 20, 2021, a staff hearing officer ("SHO") denied the PTD application, finding claimant could perform sedentary work.

{¶ 24} 10. On June 2, 2021, the Ohio Bureau of Workers' Compensation ("BWC") approved surgery for the removal of plates in claimant's foot in order to reduce pain.

{¶ 25} 11. On June 4, 2021, claimant had surgery on his foot.

{¶ 26} 12. On October 22, 2021, claimant filed a request for TTD compensation as of the date of his surgery, June 4, 2021. Claimant supported his application for TTD compensation with a MEDCO-14 from Jeffrey Wu, M.D., indicating that claimant was unable to engage in employment following the surgery.

{¶ 27} 13. On March 15, 2022, a district hearing officer ("DHO") denied claimant's request for TTD compensation, finding the following: (1) claimant was not working in any capacity prior to June 4, 2021, and has not suffered a wage loss due to the allowed conditions; (2) prior to June 4, 2021, the last time claimant worked was May 23, 2016, which is the date of the injury in this claim; (3) Drs. Kohlhaas and Tosi's MMI reports found that the allowed conditions did not prevent claimant from working, and he was capable of performing sedentary-level work activities; (4) after termination of claimant's TTD compensation as of July 27, 2020, the file contains insufficient evidence that claimant attempted to return to the workforce or attempted vocational rehabilitation prior to June 4, 2021; (5) claimant did file an application for PTD compensation on September 28, 2020, but that was denied; (6) claimant was capable of working a sedentary position when considering the restrictions arising from the allowed conditions; (7) after the order was published, claimant went to his surgeon to request that the hardware in his left foot be removed, which the surgeon did on June 4, 2021; and (8) because claimant was not working prior to June 4, 2020, and had not attempted to return to the workforce or try vocational rehabilitation during the period from July 8, 2020, through June 4, 2021, claimant had no wages to lose starting June 4, 2021, and he is not eligible for TTD compensation starting June 4, 2021. Claimant appealed the DHO's order.

{¶ 28} 14. After a hearing, the SHO affirmed the DHO's order in an April 26, 2022, order, finding the following: (1) based upon R.C. 4123.56(F), claimant is not eligible for the payment of TTD compensation beginning June 4, 2021, because he was not working at that time and, consequently, did not suffer a wage loss as a result of the allowed conditions in

the claim; (2) claimant did not have any wages to replace when he had the surgery to remove hardware on June 4, 2021; (3) the last day claimant worked was on the date of the injury in 2016; and (4) there is no evidence that claimant attempted to return to work or search for work after he was found by the commission to be capable of performing work activity following the termination of TTD compensation and the denial of the application for PTD compensation. Claimant appealed the order to the commission.

{¶ 29} 15. On May 17, 2022, the commission denied claimant's appeal. Claimant filed a request for reconsideration.

{¶ 30} 16. On July 12, 2022, the commission denied the request for reconsideration.

{¶ 31} 17. On August 18, 2022, claimant filed his petition for writ of mandamus.

{¶ 32} 18. On March 21, 2023, claimant filed a motion for summary judgment.

Conclusions of Law and Discussion:

{¶ 33} The magistrate recommends that this court grant claimant's motion for summary judgment and grant his petition for writ of mandamus.

{¶ 34} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 35} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 36} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of

employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 37} Under Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 38} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 39} In his motion for summary judgment, claimant argues the following: (1) under the first section of R.C. 4123.56(F), claimant was entitled to receive TTD benefits because he was unable to work or suffered a wage loss after the June 4, 2021, surgery, which was a direct result of an impairment arising from his industrial injury; (2) under the second section of R.C. 4123.56(F), even though claimant was not working prior to his surgery, immediately after surgery, he was not working as a direct result of reasons related to his allowed injuries; thus, claimant was entitled to receive TTD benefits because he was not working or suffered a wage loss that was not unrelated to the industrial injury, citing this court's recent decision in *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 10th Dist.

No. 21AP-294, 2023-Ohio-633; (3) that claimant was not working prior to the surgery is irrelevant to determining whether he is entitled to TTD benefits after the surgery, consistent with the holding in *AutoZone*; and (4) there is no evidence that claimant was able to work following his surgery in any capacity.

{¶ 40} The commission makes the following arguments in response: (1) the SHO did not deny TTD compensation merely because claimant was not working prior to June 4, 2021; (2) the commission agrees that R.C. 4123.56(F) does not require that a claimant must be working at the time of the request in order to be entitled to receive TTD compensation; (3) the commission performed an analysis, as required by R.C. 4123.56(F), to determine why claimant was not working on the date of his surgery, and appropriately found that, although he had been previously found to be capable of sedentary employment, he did not seek employment within his restrictions; (4) the SHO determined that the reason claimant was not working on June 4, 2021, was because he chose not to return to sedentary employment; thus, claimant was not working on the date of the surgery due to reasons not related to the allowed injury; (5) *AutoZone* is distinguishable because there is no indication that the claimant in *AutoZone* chose to no longer work as claimant did here, and, in fact, the claimant in *AutoZone* continued to work after the industrial injury until he was terminated from employment; and (6) the court in *AutoZone* held that, when considering the first sentence of R.C. 4123.56(F), the commission does not consider why a claimant was not working prior to the period of requested TTD compensation; however, when considering the second sentence of R.C. 4123.56(F), a complete analysis as to why the employee is not working as of that date must be made, and, in *AutoZone*, the court found that the claimant was unable to work as of the date of his surgery due to his surgery, but claimant in the present case chose to no longer work.

{¶ 41} The magistrate's reading of *AutoZone* supports claimant's motion for summary judgment. In *AutoZone*, the claimant was working as an assistant store manager for the employer when he sustained an injury. A workers' compensation claim was allowed, and the claimant was placed on light duty. The claimant was then involved in an argument with another employee and was terminated. The claimant filed a request for TTD compensation, which was denied by the employer. The claimant then underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the

claimant could not work until further evaluation. The DHO denied the claimant's request for TTD compensation after examining the details of the claimant's termination. After the claimant appealed, the SHO granted the claimant's request for TTD compensation, but only for the period between his surgery and the hearing with the SHO. In doing so, the SHO rejected the employer's argument that TTD compensation should be denied since the claimant had been terminated. Instead, the SHO determined, based on the fact the claimant was under restrictions due to the allowed conditions at the time of the termination and was completely removed from the workforce after the subsequent approved surgery (as evidenced by the MEDCO-14 forms), pursuant to R.C. 4123.56(F), the claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the allowed surgery through the date of the hearing. In the employer's writ of mandamus action, the magistrate denied a writ, and this court denied the employer's subsequent objections.

{¶ 42} In *AutoZone*, with regard to the first section of R.C. 4123.56(F), the employer argued the claimant was unable to work as a direct result of his prior job termination, not his impairment arising from the subsequent allowed surgery. This court addressed "direct result," as used in both the first and second sentences in R.C. 4123.56(F), as follows:

> Reading the ordinary meaning of "direct" within the context of the statute as a whole, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease. We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. [*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13]. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

*AutoZone* at ¶ 22. Thus, this court in *AutoZone* concluded the magistrate did not err in determining claimant was unable to work as a "direct" result of his workplace injury under R.C. 4123.56(F).

{¶ 43} *AutoZone* controls the present case. The facts in *AutoZone* are substantially similar to those here. In both cases, the injured workers were not working before their allowed surgery that rendered them temporarily and totally disabled. The injured workers in both cases were unemployed immediately preceding allowed surgeries that were necessitated by the industrial injury. Both workers then applied for TTD compensation because they were unable to work in any capacity after the allowed surgeries, a fact supported by the medical evidence in both cases. This court in *AutoZone* found the claimant's circumstances fit within the first sentence in R.C. 4123.56(F), because the claimant was unable to work as a direct result of his workplace injury after he underwent the allowed surgery. The commission here does not contest this reading of *AutoZone* in its memorandum in opposition and, in fact, agrees that the determination as to whether an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury under the first sentence in R.C. 4123.56(F) is made as of the date the period of TTD compensation is started. The magistrate agrees that the present circumstances fall within the purview of the first sentence in R.C. 4123.56(F) because claimant was unable to work as a direct result of the allowed surgery that was necessitated by his workplace injury.

{¶ 44} However, the commission argues that in considering the second sentence in R.C. 4123.56(F), the commission must undergo a complete analysis as to why the employee is not working as of the date of the alleged period of TTD. The commission claims that this is where the facts in *AutoZone* and the present case diverge, because the worker in *AutoZone* was unable to work as of the date of his surgery but claimant here had chosen to no longer work prior to his surgery. It was not the surgery that rendered claimant unable to work in the present case, the commission argues, but, instead, the facts make clear that claimant had already chosen not to work prior to the surgery. Applying the second sentence in R.C. 4123.56(F) to the present case, the commission urges that claimant was not working and had suffered a wage loss as the direct result of reasons unrelated to the allowed injury; i.e., his choice to no longer work.

{¶ 45} The commission's argument sounds like the doctrine of voluntary unemployment, which was explicitly superseded by the amendment of R.C. 4123.56(F). It is also the same argument made by the employer in *AutoZone* and rejected by this court. It is clear from *AutoZone* that the simple fact that an injured worker was not working prior to the claimed period of TTD does not automatically disqualify a claimant from receiving TTD compensation, as the commission acknowledged in *AutoZone*. *AutoZone* at ¶ 30. Similarly, in *AutoZone*, this court rejected the concept that an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages at the time of the claimed period of TTD. *Id*. at ¶ 32-33. Also with regard to the second sentence in R.C. 4123.56(F), in *AutoZone* we addressed the employer's argument that the magistrate erred when he found that a claimant's reasons for not working up to the date of his surgery were irrelevant. This court noted that the cases relied upon by the employer to challenge the magistrate's statement relied on the doctrine of voluntary abandonment. *Id*. at ¶ 34. We found that, "[a]lthough the employer implies we should analyze the effect of the termination and whether evidence exists that claimant had abandoned the workforce prior to his approved surgery, this is exactly the analysis the legislature expressly superseded by enacting R.C. 4123.56(F)." *Id*. We explained that, "[c]ontrary to the employer's position, R.C. 4213.56(F) requires us to review only whether the claimant in this case was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified." *Id*.

{¶ 46} This court in *AutoZone* then went on to summarize, as follows:

> Overall, we find the text of R.C. 4123.56(F) to be unambiguous. If a claimant is unable to work, R.C. 4123.56(F) sets forth two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. R.C. 4123.56(F) does not impose an additional requirement on a claimant to prove he or she is unable to work solely due to an impairment arising from an injury or occupational disease. Only when an otherwise qualified claimant is not working as a direct result of reasons unrelated to the allowed injury or occupational disease is the claimant ineligible to receive TTD compensation.

> Applied here, record evidence, namely the MEDCO-14 forms submitted by claimant's physician, demonstrated claimant was completely unable to work following the approved surgery necessitated by an impairment from a workplace injury. We find the evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue, and concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant is not working are not "unrelated" to the allowed injury. Therefore, because some evidence supports the commission's decision to grant TTD compensation in this case, we cannot disturb the order.

*Id.* at ¶ 35-36. Nowhere in the first paragraph above did this court indicate that the commission must look back to the time prior to the period of claimed TTD and determine why a claimant was not working. The court also did not undergo such an analysis in the second paragraph above to determine the claimant's eligibility for TTD. Instead, as this court explained, if a claimant is unable to work, R.C. 4123.56(F) sets forth only two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. There is no requirement that a claimant prove he or she is unable to work solely due to an impairment arising from an injury or occupational disease. In other words, although there may be other reasons why an employee is not working, as long as he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease, that is sufficient for TTD-compensation eligibility.

{¶ 47} As applied here, similar to *AutoZone*, the MEDCO-14 form submitted by claimant's physician, Dr. Wu, demonstrated claimant was completely unable to work following the approved surgery necessitated by an impairment from a workplace injury. Thus, there was uncontroverted evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue. Concomitantly, there was also evidence sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant was not working after the surgery are not "unrelated" to the allowed injury. Consistent with this magistrate's explanation in *AutoZone* at ¶ 63, the reason claimant was

not working up until the date of surgery is irrelevant for purposes of determining his eligibility for wage-loss compensation after the surgery due to the allowed conditions. Even if it were assumed that claimant was not working prior to the surgery based on personal choice or other reasons, once claimant underwent surgery due to his allowed workplace injury, the reason he was not working at that point could no longer be directly attributable to reasons unrelated to the workplace injury. Instead, claimant's not working, at that point, was directly attributable to his surgery, which was necessitated by an allowed workplace injury. Like the claimant in *AutoZone*, in the present case, there is evidence in the record that claimant had been able to work, with restrictions, at the time of his termination, but the surgery completely removed him from the workforce per Dr. Wu's MEDCO-14. Although claimant might have been able to work in some capacity prior to the surgery, it is undisputed that he was completely unable to work after the surgery.

{¶ 48} Therefore, pursuant to Civ.R. 56(C), the claimant has demonstrated that there is no genuine issue of material fact, and he is entitled to judgment as a matter of law pursuant to this court's decision in *AutoZone*.

{¶ 49} Accordingly, it is the magistrate's recommendation that this court should grant claimant's motion for summary judgment and grant his petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.